[Crim. No. 1120. Fourth Dist. Feb. 20, 1957.]

THE PEOPLE, Respondent, v. ROBERT HERSHAL LA VERNE, Appellant.

Cantillon & Cantillon for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Robert P. Kneeland, District Attorney (Orange), and Stanley C. Gould, Deputy District Attorney, for Respondent.

BARNARD, P. J.—The defendant was charged with manslaughter in violation of section 192 of the Penal Code in that on July 23, 1955, he unlawfully etc. and without malice killed Irving Richard Perrett. A jury found him guilty and his motion for a new trial was denied. He has appealed from the judgment (ordering him to be punished by imprisonment in the county jail for one year) and from an order denying a new trial.

The deceased was a college student. On the evening of July 22, 1955, he and his father went to Newport Beach to visit family friends for the weekend. He received the injuries here in question shortly after midnight, and died later that day. The defendant had rented an apartment near the beach for the use of his family, including a baby sitter, on a two-week vacation. About 1:30 or 2 in the morning the defendant, the baby sitter, and a Mr. Smith who occupied an adjoining apartment, were returning to the apartment after a swim. The baby sitter, who was in the lead, noticed a man standing in the walkway looking in the kitchen window of the defendant's apartment. She went back and told the other two what she had seen. They approached the man and the defendant asked him what he was doing there. The man turned toward the street, walked a short distance, and then broke into a run. The three pursued the man for several blocks, and during the pursuit became separated. When the others arrived at a certain intersection the defendant had in his hand a board about 4 feet long and 4 inches wide, and the evidence shows that he had been beating the man. During the pursuit shouts of "I will get that God-dam son-of-a-bitch yet" were heard by occupants of other apartments, together with sounds of running. The baby sitter testified that when she arrived at the intersection she saw the defendant with a stick raised over his head, which he was holding with both hands; that the man was then facing the defendant with his hands moving up around his head; that she heard the man say in a loud voice that the defendant should not hit him in the face or head; that she saw Mr. Smith take a stick away from the defendant; and that when Mr. Smith took the stick the defendant was holding it at his side and the man was down. Mr. Smith testified that when he arrived at this intersection the defendant and the man were standing close to each other; that he took a stick away from the defendant and threw it over to the side of the street; that when he turned around he saw that the deceased was in a sitting position; that he assisted him to his feet; that he saw that the man had a cut on his chin and was bleeding from his nose; that the deceased started to walk away; and that he said to the defendant "I think he has had enough, come on and let us go home." The defendant testified that when he arrived at this intersection the deceased confronted him with raised fists; that the deceased then cut across the boulevard and was slowed down by some automobiles; that when the deceased got on the

opposite side of the street he stopped, appeared very large and struck out at the defendant; that the defendant had a stick in his hand and struck back, and for a few seconds a sort of free-for-all took place; that after he had knocked the deceased down he heard Smith holler from across the street; that when he turned to look at Smith the deceased started to pull him down; that he swung his stick once or twice at the deceased's hands; that when Smith arrived he told Smith he was going to get the police; that he went out and tried to stop some automobiles; that while he was doing this Smith told him the man was all right and was walking away, and he thought the man had had enough; that the last time he saw the deceased he was sitting on the curbing; that on the way back to the apartment he argued with Smith about notifying the police but Smith talked him out of it; and that he did not recall how many times he hit the deceased.

, A number of witnesses who lived in nearby houses or apartments testified, some of whom were awakened by the disturbance. Several witnesses had heard the deceased moaning and groaning "Don't hit me." The sound of a board hitting the deceased was heard by others at least half a dozen times. There was evidence that while the deceased was lying on the street bleeding the defendant, who was standing over him, swung the board at him several times and then kicked him; that Smith yelled at the defendant "Don't hit him any more. He has enough"; and that the defendant did not stop but Smith went over and took the board from him. There was evidence that the deceased had no weapon in his hands, and several witnesses heard the deceased beg the defendant not to hit him. As Smith and the defendant walked away from the scene a resident of the area hollered "Why don't you take care of that boy?" They replied "Just leave him lay there." One witness testified that he saw two men pick up a body from the street and dump it near a house. The ambulance driver testified that when he arrived the man was lying on the sidewalk. He was bleeding from his ears, nose and mouth, and there was blood on the sidewalk and on the street. The evidence shows that the deceased had been badly beaten about the head and shoulders, and his right hand was injured. There were three distinct fractures of the skull and severe and extensive brain injury. Shortly after they returned home the defendant and Mr. Smith went fishing, and did not return until 5 p. m. of that day. During this trip they discussed the attack on Perrett.

The appellant does not, for obvious reasons, question the sufficiency of the evidence to sustain the verdict, and no question is raised with respect to the punishment imposed by the judgment. It is argued, however, that the court erred in giving certain instructions, in overruling an objection to one argument of the prosecution, and in admitting two exhibits into evidence.

It is first contended that the court erred in instructing the jury as follows:

"Due caution and circumspection, as those words are used, mean such caution and circumspection as are reasonably appropriate to avoid injury to one's self and others, under the conditions at hand as they would be viewed by an ordinarily reasonable person in the same situation as the person whose conduct is in question. To exercise due care and circumspection is to take those proper precautions which a person of ordinary prudence would use in the same circumstances."

It is argued that while this instruction is accurate insofar as it defines the civil standard of negligence it is inaccurate in the definition of criminal negligence, and that under the decision in *People* v. *Penny*, 44 Cal.2d 861 [285 P.2d 926], the giving of this instruction was reversible error. In the Penny case, the defendant was charged with a violation of subdivision 2 of section 192 of the Penal Code and the sole matter there involved was a homicide resulting from negligence. The court there held that in a prosecution for negligent homicide a greater degree or form of negligence is required than that required in civil cases; and that in such a case the jury should be instructed as to what constitutes criminal negligence. ▪ In the present case the charge included both subdivisions 1 and 2 of section 192, and the evidence showed something quite different from the negligence involved in the Penny case. No close question of mere negligence of any sort was here involved and the evidence conclusively disclosed a brutal and intentional attack which was beyond any reasonable necessity or justification. The court here gave the definition of manslaughter in the language of the statute, omitting subdivision 3 thereof, and in explaining the meaning of a number of matters in the statute used the language here criticised. In that connection, and immediately before the criticized instruction, the court further told the jury:

"When there is a question whether or not a defendant conducted himself without due caution and circumspection,

the jury must answer the question in the light of all the surrounding circumstances, for the term 'due caution and circumspection' is a relative term, and the amount of caution required under it will vary in accordance with the nature of acts being done, the type of any instrumentality being handled or used, the surrounding circumstances, and the danger that reasonably should be apprehended.''

The portion just quoted pointed out that due caution and circumspection was to be considered in view of the nature of the act being done, the type of the instrumentality used, the surrounding circumstances and the danger to be reasonably apprehended. The criticized instruction which followed would normally be understood in that connection, and as referring to what would be done by a reasonable person, under the circumstances, and through the use the instrumentality, disclosed by the evidence, and having knowledge of the danger that was reasonably to be anticipated. In view of the additional matter contained in these instructions, and under the circumstances shown by the evidence, it appears very unlikely that the jury could have been misled as it might have been in the Penny case, or that the verdict was in any way affected by the criticized portion of the instruction.

Conceding that the criticized instruction was erroneous in that it did not properly distinguish between ordinary negligence and the criminal negligence involved in a prosecution for negligent homicide, it does not follow that this error requires a reversal. Section 4½ of article VI of the Constitution provides, among other things, that a judgment shall not be set aside on the ground of misdirection of the jury unless after an examination of the entire case the court is of the opinion that the error complained of has resulted in a miscarriage of justice. It is well settled that the question as to whether the error was sufficiently prejudicial to require a reversal must be determined from the circumstances of the particular case. In *People* v. *Watson*, 46 Cal.2d 818 [299 P.2d 243], it is stated that the test generally applicable in determining whether a reversal is required is whether or not it appears to the reviewing court that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. Under the evidence here it would be unreasonable to believe that this jury could have been misled by this instruction into deciding the case on the ground that the appellant was guilty of any form of negligence, or that the fact that there is a legal dis-

tinction between civil and criminal negligence would have made any difference to it. All of the evidence, including the testimony in behalf of the appellant, showed something more than negligence of any kind and disclosed, without conflict, an intentional assault rather than a mere lack of care. Further, the evidence was sufficient to show the appellant's guilt under either of the first two subdivisions of section 192. The appellant himself admitted that he repeatedly struck the deceased with this lethal weapon without regard as to where he hit the victim; that he struck the deceased even when that victim's back was turned; that he continued to hit the deceased after he had fallen to the ground and while the deceased was begging him not to strike him; and that he continued to strike the deceased until Mr. Smith took the stick from him. It is inconceivable that the jury based its verdict on any improper consideration of the question of due caution and circumspection. We are far from convinced that any miscarriage of justice has occurred, and the record does not indicate that this instruction was prejudicial. It does not appear to us as reasonably probable that a result more favorable to the appellant would have been reached in the absence of this error, and it would seem that the judgment rendered was unduly favorable to him.

It is next contended that the court erred in giving portions of its instructions which in substance distinguish manslaughter from murder, define heat of passion, and distinguish between the heat of passion which would reduce homicide to manslaughter and that involved in the case of murder. It is argued that the giving of such instructions in a manslaughter case is error, citing *People* v. *Hatchett,* 63 Cal.App.2d 144 [146 P.2d 469], and that instructions on such extraneous matters could only tend to confuse the jury. In the Hatchett case a reversal was based upon the cumulative effect of numerous errors in a case stated by the court to be one where the defendant's guilt was not firmly established. ■ No prejudice appears here in pointing out to the jury that manslaughter is distinguishable from murder principally in that the malice which is required in a murder case is not required in a manslaughter case, and heat of passion was one of the elements involved in the charge of manslaughter here being tried. It would seem from the record that these instructions would clarify the matter for the jury rather than confuse it, and no prejudice appears.

■ It is next contended that the court erred in instructing the jury with respect to the right of self-defense. These instructions in substance stated that the right of self-defense is not immediately available to a person who has sought or induced a quarrel, and that one who makes a felonious attack cannot thereafter avail himself of the right of self-defense until he has further declined combat. It is argued that these instructions had no application to the facts of the case. One of the questions presented to the jury was whether or not the deceased had been committing a public offense in the appellant's presence. Another was whether or not the appellant had been attempting to arrest the deceased when this incident occurred. The appellant also attempted to show that the deceased was the aggressor in that he threatened the appellant with his fists and attempted to strike him when the appellant caught up with him at the intersection. In view of some of the evidence received these instructions were proper and, in any event, no prejudice appears.

It is next contended that error appears in that an instruction given at the request of the prosecution and one given at the request of the appellant, with respect to whether a slaying is justified in order to compel submission to an arrest, are conflicting. The complaint made is of portions of two longer instructions, and when read in their entirety no conflict appears. We see neither error nor prejudice in this connection.

■ It is next contended that the court erred in instructing the jury that it should view with caution any evidence which purports to relate to an oral admission of the defendant or an oral confession by him, and stating the usual rules in that connection. It is argued that these instructions had the effect of implying to the jury that the defendant had made a confession when there was no evidence of that fact, and that even though the instructions correctly stated abstract propositions of law there was no basis in the evidence for giving them. Several witnesses testified as to statements made to them by the appellant and there was considerable evidence as to statements he made to the officers. The evidence justified these instructions and they were more favorable to the appellant than otherwise. No prejudice appears. (*People v. Todd*, 91 Cal.App.2d 669 [205 P.2d 453].)

■ It is next contended that the court committed error in overruling an objection to an argument made by the district attorney. In his argument the district attorney stated that it is not an element of involuntary manslaughter that the

person charged with the offense shall have actually intended to take the life of the deceased. He then stated that involuntary manslaughter might be committed by a person who negligently drove an automobile through a red light and collided with another automobile in which someone was killed. The appellant objected on the ground that the statement of law was not correct in this case and asked the court to instruct the jury to disregard that statement. The court overruled the objection but admonished the jury the court would instruct it as to the law and that it should not apply any law given by counsel in his argument. Subsequently, the jury was instructed to be governed solely by the evidence introduced in the trial and the law as stated by the court. No reversible error appears in this connection.

Finally, it is contended that the court erred in admitting into evidence two colored slides which are pictures of the brain of the deceased and of a cross-section thereof. It is argued that there had previously been extensive testimony as to the cause of death and the nature of the blows received by the deceased, that the appellant had stipulated that he struck the deceased and that as results thereof the deceased suffered multiple fractures and brain hemorrhage which caused his death, and that this evidence served no purpose except to inflame the minds of the jury. These slides were used in connection with the testimony of the doctors and served to prove that excessive force had been used by the appellant. They are small pictures and are much less gruesome than the usual pictures introduced in the ordinary case, and we are unable to see either error or prejudice in this connection. (*People* v. *Burwell,* 44 Cal.2d 16 [279 P.2d 744] ; *People* v. *Cavanaugh,* 44 Cal.2d 252 [282 P.2d 53].)

This was not a close case and the evidence, including the appellant's own testimony, discloses a brutal and unnecessary beating of the victim which could not have been justified even under the testimony of the appellant and his own witnesses. It neither appears that there has been any miscarriage of justice nor that a different result could reasonably be expected from a retrial of the action.

The judgment and order denying a new trial are affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied March 20, 1957, and appellant's petition for a hearing by the Supreme Court was denied April 17, 1957.