OOTJGHLIN, J.
 

 The defendant was charged with; tried by a jury for; and convicted of an attempt to murder his wife. He moved for a new trial, which was denied. Thereupon judgment of imprisonment in the state prison was pronounced. From the judgment so entered and the order denying his motion for a new trial, he appeals. An order denying a motion for a new trial is no longer appealable (Pen. Code, § 1237, as amended by Stats. 1961, eh. 850, p. 2229, § 5), and the purported appeal therefrom should be dismissed.
 

 The defendant contends that the trial court committed prejudicial error in refusing to instruct the jury (1) that it might find him guilty of any offense necessarily included within the offense with which he was charged; (2) that the offense of attempted murder necessarily includes the offense of assault with a deadly weapon and the offense of battery; and (3) with respect to the elements of those offenses.
 

 The defendant and his wife were married in Chicago on March 19, I960; separated in July of that year; and were reunited in California the following August. Their separation resulted from problems and ensuing arguments concerning sex and money matters.
 

 On the morning of July 14, 1961, while they were in the same bed, the wife heard'a loud noise and felt a pain in her chest. The husband had taken a pistol to bed with him upon retiring; kept it under the bed during the night; wrapped it in a pair of shorts to muffle the sound in the event it were fired; awoke in the morning and talked with his wife; obtained the pistol from under the bed and, holding it in his right hand, concealed it under the bed clothes; raised up on his left elbow; and shot his wife who was lying on her back. No argument, quarrel, angry words or hostile action immediately preceded the shooting. She felt a pain; sat up; thought that a blood vessel had broken; did not see the pistol or know that
 
 *729
 
 her husband owned such; did not appreciate that she had been shot; and asked him to get a doctor. He placed her down in bed; told her to take it easy and everything would be all right; a few minutes later left home purportedly to get a doctor; returned about 2 o ’clock in the afternoon; when asked if the doctor had come, replied in the negative; left a second time to get a doctor and did not return until 12:30 o ’clock that night at which time his wife’s pain had subsided; left again in a few minutes, this time to get a pizza; and was not seen by her thereafter until the preliminary hearing. He never tried to get a doctor or other assistance.
 

 Following his arrest, when questioned by the police, the defendant stated that he had shot his wife; had purchased the pistol about a month before; prior to this time had thought of disposing of his wife by shooting her but did not buy the gun for this express purpose, although it was in the back of his mind; that he felt he could not go through another separation ; that the arguments which led to their first separation were increasing; that he thought it better to dispose of his wife rather than be separated from her; however, there still was a doubt in his mind as to whether he would do so, and this doubt persisted even on the morning in question, although the preparations he made preliminary to taking the pistol into bed were with the thought in mind that he might kill her; and while considering whether or not to shoot he put too much pressure on the trigger and the pistol fired.
 

 At the. trial the defendant testified that he did not “mean to shoot” his wife and that he was not “aware” of tightening his finger on the trigger before the pistol went off. However, he admitted writing a letter to a half sister in which he said, “You probably remember, I think I wrote you about it that my marriage was not very happy. She was making me so mad that I actually thought of killing her in recent days before July the 14th. Well, I attempted to by shooting her, and thank goodness it was unsuccessful....”
 

 Relying on his testimony that he did not mean to shoot his wife and that he was not aware of tightening his finger on the trigger before the pistol went off, the defendant contends that he introduced evidence from which the jury could have found that he was not guilty of an attempt to commit murder, because he did not have the specific intent requisite to an attempt (see
 
 People
 
 v.
 
 Mize,
 
 80 Cal. 41 [22 P. 80]), but that he was guilty of an assault with a deadly weapon or battery,
 
 *730
 
 which do not require a specific intent;
 

 [1]
 

 that when a defendant introduces evidence from which it may be found that he was guilty of a less serious offense than that with which he is charged, the jury should be instructed on the doctrine of included lesser offenses; and that the refusal of the trial court to give his requested instructions thereon was prejudical error.
 

 The prosecution contends (1) that instructions on lesser included offenses should not be given unless the lesser offenses are included within the offense charged even though the evidence shows they have occurred; (2) that the offenses of assault with a deadly weapon and of battery are not included within the offense of attempted murder; (3) that if the defendant was guilty of any offense he was guilty of attempted murder; (4) that, for the foregoing reasons, the requested instructions properly were refused; and (5) that, in any event, any error in refusing to give these instructions did not constitute a miscarriage of justice which authorizes a reversal. (Cal. Const., art. VI, § 4%.)
 

 The latter contention is well taken; requires an affirmance of the judgment; and renders unnecessary a consideration of the other contentions raised by the parties.
 

 The controlling and acceptably stated rule in the premises is: “That a ‘miscarriage of justice’ should be declared only when the court, 1 after an examination of the entire cause, including the evidence, ’ is of the ‘ opinion ’ that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.”
 
 (People
 
 v.
 
 Watson,
 
 46 Cal.2d 818, 836 [299 P.2d 243].)
 

 The defendant testified that he purchased the pistol in question a month and one-half before the shooting; that the reason for this purchase was “home protection” because his wife was at home alone frequently, and also for recreational use on a pistol range; however, he never told his wife that he had the pistol, nor did she know that he had it; that, after
 
 *731
 
 getting the pistol he thought of killing his wife; that he had tested the pistol by firing it twice in the country, with its muzzle wrapped in a rag so that it could not be heard; that on two occasions before the shooting he had wrapped the pistol in a rag, taken it to bed with him, and thought of disposing of his wife; that he and his wife had been having trouble and he “felt that if the things continued as they were—as it was going, that there would have been another breakup”; that on the night before the shooting he wrapped the pistol in a rag, which the evidence establishes was a pair of shorts, and placed it under the bed; that the next morning, while he was in bed, he got the pistol without his wife’s knowledge; concealed it under the bed clothes; held it in his right hand; turned on his left side; put his finger into the trigger guard and, although he did not mean to shoot his wife and was not aware of tightening his finger on the trigger, the pistol went off and the bullet struck her in the chest; that she did not know she had been shot, nor did he tell her so; that his wife asked him to get a doctor, that he left the house, drove around for several hours and returned about 2 p. m.; that a few minutes later he left again and did not return until about midnight; that shortly thereafter he left, telling his wife he was going to get a pizza, and started for New York; that the reason he returned to his home was to get his clothes; and that at no time did he try to get a doctor. The defendant did not deny making the statements to the officers, parts of which heretofore have been noted, and in which he admitted that immediately before the shooting he pointed the pistol at his wife, put his finger on the trigger, and applied too much pressure which caused it to go off, although at the time of trial he testified that he was unable to say whether the pistol was pointing at his wife and did not know whether he had his finger on the trigger or applied pressure.
 

 It should be noted that the defendant’s testimony as to the shooting of the pistol was limited to the vague statement that he
 
 was not aware
 
 of tightening his finger on the trigger; was not a direct statement that he did not tighten his finger on the trigger or did not fire the pistol; and did not constitute an assertion that it was discharged accidentally. His testimony that he did not “mean to shoot” his wife “when the gun went off” must be considered in the light of the fact that at that time he had the pistol pointed in her direction and there was no claim that his hand, arm or body moved or slipped accidentally and caused the pistol to be discharged.
 
 *732
 
 Moreover, he offered no denial of or explanation for the statement in the letter to his half sister that he had attempted to kill his wife.
 

 Judged in the light of trial experience, it is inconceivable that, under the evidence before us, the jury would have rendered a verdict other than guilty of an attempt to commit' murder, even though instructed that it might find the defendant guilty of a lesser offense.
 

 The defendant contends that even assuming the testimony respecting his intention is weak and incredible, nevertheless it was prejudicial error not to give an instruction based thereon and cites a number of cases in support of this position, some of which involve a refusal to instruct on lesser offenses and some of which do
 
 [2]
 
 The import of these decisions is that a trial court, when requested to do so, should give an instruction on every applicable theory of law which is supported by any evidence, however incredible it may be, and that a refusal to do so is error. However, these decisions do not hold that such error,
 
 ipso facto,
 
 is prejudicial. (See
 
 People
 
 v.
 
 Driscoll,
 
 53 Cal.App.2d 590, 595 [128 P.2d 382];
 
 People
 
 v.
 
 Miller,
 
 67 Cal.App. 674, 679-680 [228 P. 68].)
 

 An appellate court will not weigh the truth or falsity of evidence to determine whether an instruction based thereon should be given.
 
 (People
 
 v.
 
 Carnine,
 
 41 Cal.2d 384, 389 [260 P.2d 16].) On the other hand, this rule does not foreclose a consideration of the improbability of the jury’s acceptance of that testimony in determining whether, under all of the circumstances of the case, a refusal to give such instruction was prejudicial error. As applied to the instant case, the question is not one of weighing the evidence to determine whether the defendant’s testimony that he did not “mean to shoot” his wife is true or false. The jury has done this; has refused to accept this testimony; and, by its verdict, has found that the pistol was intentionally fired with intent to kill. The
 
 *733
 
 jury was told through argument of counsel, and by instructions of the court, that before it could find the defendant guilty it was required to find that at the time the shot was fired he intended to murder his wife. The question at bar is whether in the light of all of the evidence, the arguments and the instructions the jury would have accepted this testimony in question if it had been privileged to find the defendant guilty of assault with a deadly weapon or of battery instead of an attempt to murder.
 

 An evaluation of the evidence as related to the probability of a different result in the absence of error, has been considered in cases involving error from refusal to give instructions
 
 (People
 
 v.
 
 Watson,
 
 46 Cal.2d 818, 837 [299 P.2d 243];
 
 People
 
 v.
 
 Koenig,
 
 29 Cal.2d 87, 93, 94 [173 P.2d 1];
 
 People
 
 v.
 
 Clark,
 
 117 Cal.App.2d 134, 140 [255 P.2d 79]); error in the giving of an instruction
 
 (People
 
 v.
 
 La Verne,
 
 148 Cal.App.2d 605, 610-611 [307 P.2d 31];
 
 People
 
 v.
 
 Shaw,
 
 115 Cal.App.2d 597, 604 [252 P.2d 670]); error in the admission of evidence
 
 (People
 
 v.
 
 Riser,
 
 47 Cal.2d 566, 577 [305 P.2d 1];
 
 People
 
 v.
 
 Logan,
 
 41 Cal.2d 279, 285 [260 P.2d 20];
 
 People
 
 v.
 
 Guiterrez,
 
 152 Cal.App.2d 115, 123
 
 [3]
 
 [312 P.2d 291];
 
 People
 
 v.
 
 Estrella,
 
 116 Cal.App.2d 713, 716 [254 P.2d 182];
 
 People
 
 v.
 
 Crawford,
 
 115 Cal.App.2d 838, 843
 
 [4]
 
 [252 P.2d 963]); error in the exclusion of evidence
 
 (People
 
 v.
 
 Walker,
 
 150 Cal.App.2d 594, 600 [310 P.2d
 
 110]; People
 
 v.
 
 Misener,
 
 115 Cal.App.2d 63, 69 [251 P.2d 683]—where the court said the evidence “was of little probative value”); error in admitting a conversation
 
 (People
 
 v.
 
 Shelton,
 
 151 Cal.App.2d 587, 589 [311 P.2d 859] — where the “circumstantial evidence of the appellant’s [defendant’s] guilt was very strong”) ; and error resulting in denial of the right to obtain and introduce inconsistent statements of adverse witnesses where there was other evidence, although contradicted, which supported the verdict.
 
 (People
 
 v.
 
 Riser, supra,
 
 47 Cal.2d 566, 588-590.)
 
 [5]
 

 
 *734
 
 After a review of the whole case before us, including the evidence, we are of the opinion that it is not reasonably probable that the verdict of the jury would have been different if the instructions on lesser included offenses had been given.
 
 (People
 
 v.
 
 Watson,
 
 46 Cal.2d 818, 836 [299 P.2d 243].)
 

 The judgment is affirmed and the appeal from the order denying a new trial is dismissed.
 

 Griffin, P. J., and Shepard, J., concurred.
 

 [1]
 

 Tlie defendant’s testimony that he did not intend to shoot his wife, if accepted by the jury, would establish not only a lack of any specific intent to murder but also of any general intent to commit either an assault or battery (see
 
 People
 
 v.
 
 Carmen,
 
 36 Cal.2d 768, 775 [228 P.2d 281];
 
 People
 
 v.
 
 Dodel,
 
 77 Cal. 293, 294 [19 P. 484];
 
 People
 
 v.
 
 Williams,
 
 189 Cal.App.2d 254, 265 [11 Cal.Rptr. 142]) and, although not expressed in his brief, it is assumed that he contends the evidence would establish criminal negligence as the basis for a verdict finding him guilty of the latter offenses.
 
 (People
 
 v.
 
 Alexander,
 
 41 Cal.App.2d 275, 279-280 [106 P.2d 450];
 
 People
 
 v.
 
 Vasquez,
 
 85 Cal.App. 575, 578-579 [259 P. 1005];
 
 People
 
 v. Mendez, 67 Cal.App. 724, 726 [228 P. 349].)
 

 [2]
 

 The cited cases are:
 
 People
 
 v.
 
 Carnine,
 
 41 Cal.2d 384, 390 [260 P.2d 16];
 
 People
 
 v.
 
 Carmen,
 
 36 Cal.2d 768, 772 [228 P.2d 281];
 
 People
 
 v.
 
 Darrow,
 
 212 Cal. 167, 183 [298 P. 1];
 
 People
 
 v.
 
 Wong Hing,
 
 176 Cal. 699, 705 [169 P. 357];
 
 People
 
 v.
 
 Keefer,
 
 65 Cal. 232, 233-234 [3 P. 818];
 
 People
 
 v.
 
 Burns,
 
 88 Cal.App.2d 867, 871 [200 P.2d
 
 134]; People
 
 v.
 
 Perkins,
 
 75 Cal.App.2d 875, 881 [171 P.2d 919];
 
 People
 
 v.
 
 Wallace,
 
 2 Cal.App.2d 238, 242-243 [37 P.2d 1053];
 
 People
 
 v.
 
 Peete,
 
 54 Cal.App. 333, 356-359 [202 P. 51];
 
 People
 
 v.
 
 Wilson,
 
 29 Cal.App. 563 [156 P. 377];
 
 People
 
 v.
 
 Carroll,
 
 20 Cal.App. 41, 45 [128 P. 4];
 
 People
 
 v.
 
 Hayes,
 
 9 Cal.App. 301, 305 [99 P. 386];
 
 People
 
 v.
 
 Quimby,
 
 6 Cal.App. 482, 486 [92 P. 493];
 
 People
 
 v.
 
 Williamson,
 
 6 Cal.App. 336, 339 [92 P. 313];
 
 People
 
 v.
 
 Stofer,
 
 3 Cal.App. 416, 418 [86 P. 734].
 

 [3]
 

 In the cited ease the court based its conclusion that error was not prejudicial on the fact that “the evidence of guilt is quite overwhelming ’ ’; the story told by the defendant ‘ ‘ is quite unbelievable ’ ’; while •the story of the prosecuting witness “is clear, coherent and reasonable.’’
 

 [4]
 

 In considering the error complained of the court said; “But when the facts are considered we think the guilt of these two men was so clearly shown that it cannot be said a miscarriage of justice occurred. For that reason, and for that reason alone, we think the conviction of Clyde Crawford cannot be reversed upon the ground now being discussed. ’ ’
 

 [5]
 

 In this ease the court said (p.'589);-“We are of the opinion, -therefore, that it is not reasonably probable that -the -jury,- fácecl with- this
 
 *734
 
 evidence, would have chosen to believe instead the unsupported testimony of the defendant that he had not been at the Hilltop Cafe on the night of July 11th; accordingly, there has been no miscarriage of justice.”