[Crim. No. 1876. Fourth Dist. Sept. 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. GABRIEL JOHN GRANADOS, Defendant and Appellant.

Sheela, O'Laughlin & Hughes and Peter J. Hughes for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

GRIFFIN, P. J.—Defendant-appellant, aged 19, was charged in a grand jury indictment, in count one, with unlawful possession of marijuana, in violation of Health and Safety Code, section 11530; in count two, with unlawful possession of heroin, in violation of Health and Safety Code, section 11500; in count three, with murder of Larry Cortez, aged 19, in violation of Penal Code, section 187; and in count four, with unlawful sale of a narcotic to a minor, in violation of

Health and Safety Code, section 11502.1. Alfredo Piceno and Frank Moran were charged jointly with Granados in the original indictment with the crime of murder, accessory to the crime of murder, and sale of a narcotic. Apparently these latter two defendants turned state's evidence and a plea of guilty to the charge of accessory after the crime of murder was entered by them. An amended indictment was filed against defendant Granados alone on the original charges and he was found guilty by a jury on each count. On the murder count, the degree was fixed as murder in the second degree. Defendant appealed from the judgment and order denying a new trial. Since the order is not appealable, the appeal from the order should be dismissed. (*People* v. *Eppers,* 205 Cal.App.2d 727 [23 Cal.Rptr. 222].)

 This appeal concerns only the conviction on the murder count and the conviction on the count charging sale of a narcotic to a minor. Defendant's sole contention on this appeal is that there was insufficient corroboration of the testimony of accomplices on these two counts. He relies upon such cases as *People* v. *Thurmond,* 170 Cal.App.2d 121 [338 P.2d 472]; *People* v. *Toney,* 192 Cal.App.2d 711 [13 Cal. Rptr. 756]; *People* v. *Robbins,* 171 Cal. 466 [154 P. 317]; and *People* v. *Davis,* 210 Cal. 540 [293 P. 32].)

Moran and Piceno testified that on the afternoon of May 16, 1962, they and the victim, Cortez, wanted some narcotics and they drove around in Piceno's 1955 Mercury, with Piceno driving, and then stopped at defendant's house in Eden Gardens near Solana Beach. They parked in the driveway of defendant's house; Moran asked defendant if he had anything and defendant indicated that he had some heroin. Moran wanted to buy heroin. Piceno took five dollars from Cortez and put up ten dollars and apparently paid it to Moran. Defendant asked them to go to his bathroom, saying, "We will fix in here," and they singly did so. Moran and Piceno testified that while each of them was in the bathroom, defendant assisted him in receiving an injection of heroin in his arm. Defendant took out the spoon and things, set them out and said, "There it is." Piceno asked defendant why he didn't "fix" him (Piceno), and defendant then put the heroin into a spoon, added water, "cooked" it, put it in an eyedropper and needle and administered the shot. This same process was followed as to Moran. They said that Cortez had had four or five beers before he went into the bathroom with defendant, but that he was all right; that after he left the

bathroom he staggered and then fell down and became unconscious. They dragged him into a nearby bedroom and attempted to revive him. Defendant's wife came to the door, and they told her that Cortez was drunk. Both Moran and Piceno testified that they felt sick; that Piceno went to the bathroom to vomit on several occasions; that defendant's wife fixed them each a plate of lunch but one of them did not eat; that they obtained ice and a towel to place on Cortez' head and applied artificial respiration. Piceno said that blood was coming from Cortez' nose and he told someone to "put something in there to stop it"; that a piece of toilet paper, similar to that found in defendant's bathroom was later found stuffed in Cortez' nose and his head was covered with a bloody towel; that after awhile Moran concluded that Cortez was dead and Piceno and defendant put him in Piceno's automobile; and that defendant went back into his house. Moran said that they dumped the body out near the Del Dios Highway.

After the discovery of the body of Cortez on May 17, around 3 p.m., a deputy sheriff on the narcotics detail visited defendant's home about 1 a.m. on May 20, 1962, acting on information about narcotics. Defendant greeted the officer at the door and said, "What is going on?" The officer identified himself and said, "Do you have any idea why we are here?" and defendant said he had heard that the "heat was on" and he had been expecting them. He invited them into the house. The officers found the pupils of defendant's eyes to be contracted; noted that he staggered and his speech was slurred and that he had needle marks on his arms and was under the influence of some narcotic. The bedroom was searched and a piece of cotton was found on the floor and in the dresser drawer, together with a spoon, needle, eyedropper and paper bindle. Cotton is customarily used to strain diluted heroin to remove impurities.

An expert forensic chemist found heroin in some of the cotton. Marijuana and a brownish powder containing heroin were also found. Defendant stated that he did not use heroin and said that he had had the kit and heroin for some time. He said he did not know Larry Cortez and that neither he nor Piceno had ever been in his home; that he had not seen Piceno for a month and that the last time Moran was in his home was about eight months prior to that time. He said that he was at home all day on May 16, and that that night he went to Vista and returned home about 9 p.m. and no one

visited him during that time. Defendant was examined by a physician and the doctor found marks on his arms, some as recent as 24 hours old, and defendant appeared to be going through withdrawal symptoms. Toilet paper was taken from defendant's bathroom and a criminalist said that it compared to the type found in the nostril of deceased, by color, texture and type of perforations. Defendant then said that he had been using heroin and what he had in his possession was contraband from Tijuana. Defendant did not testify at the trial and offered no evidence.

Other evidence of corroboration of the so-called accomplices is that one Alphonso Vitela testified that he saw Cortez, Moran and Piceno at his house that day on May 16 about 1:45 p.m., and that they were drunk. Juanita Vitela testified that she saw them coming from Escondido about 3:30 p.m. that day and Piceno was driving. Defendant's sister-in-law testified that she was at defendant's house on that day and defendant and his wife were there; that she left and later returned at about 5:30 p.m. and a car was parked in the driveway. She identified photographs of Piceno's car and said that they resembled it. She said that she knew Moran and talked with him there, but that she did not know Piceno; that she sat in the living room and defendant asked his wife to prepare some food and she prepared three plates of tostados and defendant took them down the hall; that she saw Moran going across the hall into the bathroom on many occasions and that he was throwing up; that she saw a tall, thin man go into the bathroom and at one time defendant came into the kitchen for ice; that defendant later returned with three empty plates and no food was left on them; that she saw Moran go out of the hall door and then it sounded like they were carrying someone and the person was too heavy and swayed back and forth into the wall and then she heard the car door open; that she then heard someone return to the house and she went into the nursery room and defendant was there; that defendant was cleaning up cigarette butts and glasses and defendant's wife was angry because of the mess. She said that the odor smelled like a dead horse. She said there was some moisture on the floor of the nursery.

An autopsy was performed on Cortez and it was concluded that death was due to poisoning; that if a person lapses into unconsciousness 10 or 15 minutes after having a shot of heroin, it would be an indication of a narcotics overdose.

From an examination of the entire evidence, it appears

that there was sufficient corroboration of the testimony of the claimed accomplices. (*People* v. *McMahon,* 116 Cal.App.2d 883 [254 P.2d 903]; *People* v. *Poindexter,* 51 Cal.2d 142, 149 [330 P.2d 763]; *People* v. *MacEwing,* 45 Cal.2d 218 [288 P.2d 257]; *People* v. *Rissman,* 154 Cal.App.2d 265 [316 P.2d 60]; *People* v. *Griffin,* 98 Cal.App.2d 1 [219 P.2d 519]; *People* v. *Aadland,* 193 Cal.App.2d 584 [14 Cal.Rptr. 462].)

Appeal from order denying new trial dismissed. Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 15, 1963.