[Crim. No. 5867. First Dist. Div. Two. Mar. 28, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. HOWARD DEDRICK, Defendant and Appellant.

Steven J. Dedina for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Defendant appeals from judgment of conviction after verdict, of violation of sections 484-487, Penal Code (grand theft).

## QUESTIONS

1. Sufficiency of evidence.
2. Was defendant sufficiently warned of his right to an attorney to admit his extrajudicial statements?

## EVIDENCE

Defendant was charged by information with having wilfully and unlawfully taken $7,000 from one Otto Will on October 14, 1965.

Otto Will, the complaining witness, was a retired rancher 87 years of age and a resident of Santa Rosa since 1949. In the Summit Savings and Loan he had $24,900 on deposit, money received from inheritances. He had known defendant for only a few months. He had made defendant certain prior loans, one for $2,000 to enable defendant to buy a Chevrolet, another for $800 to enable defendant to pay his bills, and another for $500 for an unnamed purpose.

On or about October 14, 1965, defendant represented to Will that he had bought a house on which he had made a downpayment and that if within a day or two he did not pay the

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

remainder of the purchase price, $7,000, he would lose both the house and the downpayment. Because defendant was a friend and because he promised to repay the loan, plus a good "dividend," as soon as he received certain insurance money which was due him because of injuries he had sustained in an automobile accident, Will loaned him $7,000.

On October 14, defendant accompanied Will to the savings and loan office, waiting for him on the corner while Will went inside. Will told the loan officer that he desired to withdraw $7,000 to loan to a friend who was either purchasing or making a payment on a home. (The loan officer corroborated this.) The latter suggested that Will obtain the name, address and telephone number of the friend to whom the loan was to be made, and also suggested that he have papers drawn by an attorney before he loaned the money without collateral. Will did not know the defendant's address or telephone number. Will then went out to defendant, who stated that he would not sign any papers nor give his name and address. Returning to the savings and loan office, Will obtained a check for $7,000. Will then went to the Exchange Bank. Defendant waited outside in his car. Will told the bank teller that he was lending the money to an individual who was purchasing a home and needed cash. The teller suggested a cashier's check so that Will would have a receipt for the money, but Will said the person to whom he was lending the money did not want a check or anything of that nature. (The teller corroborated Will's testimony in this respect.) Will was then given $7,000 in $100 bills. Will took these out and gave them to defendant.

Defendant did not tell Will he wanted the money to buy a car. Will would not have given him the money to buy a Cadillac. Defendant was driving the Chevrolet on October 14 and Will never saw him drive any other car. Defendant never offered to give, nor did he give, defendant a writing of any kind in connection with any of the loans.

Evidence was admitted to show, and defendant stipulated, that he owned no real property whatsoever. Defendant used $2,691.72 of the $7,000 to pay off a balance owed on the Chevrolet and the balance plus the Chevrolet was used by defendant as a downpayment on a Cadillac which he purchased the same day on which he received the $7,000.

Chief Flohr of the Santa Rosa Police Department arrested defendant on December 22, and at the police station Flohr questioned him, first reading to him a printed card, "You are

hereby advised of your right to an attorney and of your right to remain silent and of the fact that anything you say may be used against you in a court of law." Flohr then handed the card to defendant, asking him to read it, which defendant did. Defendant stated that he did not know Will personally but had talked to him. He estimated Will's age to be 59 or 60. He did not know Will's address but thought that he lived in the vicinity of 9th Street. He denied he had ever asked Will for money to buy a house or talked to him about buying a house, or that Will had ever loaned or given him any money. He admitted buying the Cadillac, turning the Chevrolet in after paying off the indebtedness on the Chevrolet. He stated that he had financed the balance on the Cadillac at the Bank of America in San Francisco. He admitted that his statement was voluntary.

Testifying in his own behalf, defendant stated that he met Will in the summer of 1965 and their relationship was a friendly one. He had talked with Will and visited the latter's home. Will knew his telephone number and had called him at least on one occasion. Defendant admitted receiving the loans hereinbefore mentioned. He stated that he had been disabled in an automobile accident, but denied telling Will that he expected to receive any insurance money, admitting only that he did tell Will that he would start repaying the loans in January 1966, when he would be over his disability and able to return to work. He received $2,000 from an insurance company but used it to pay medical bills. He asked Will if he wanted to go to a notary public and have the loans written up legally, but Will replied that he thought it unnecessary and did not want to go to that much trouble; that he did not like to talk to people about his business or checks; that he liked defendant as a friend and would go ahead and lend him the money.

On October 13, he discussed with Will at the latter's home the matter of the $7,000 loan. He told Will that he was having trouble with his car and wanted to pay it off and trade it in on another car. Will agreed to loan him $7,000 for this purpose but again declined to have any documents written up. He admitted driving Will to the savings and loan but denied that Will asked him for his name and address, as Will already knew them. He also denied that Will made two trips into the savings and loan. He admitted using the loan money to pay the balance on the Chevrolet and to buy the Cadillac. Two

days after the purchase, he drove the Cadillac to Will's house. Will came out and admired it.

As to his interview with Chief Flohr, he knew the latter, who on a previous occasion had told defendant that he would be better off if he would leave town. The Santa Rosa police continually stopped him and checked to see if there were any outstanding traffic tickets or warrants against him. On the morning of his arrest, he was pulled from his house, slammed against the wall and searched. He was told that his bail was $1,600. At the police station he denied knowing anything about a house but admitted owning a Cadillac. One of the other policemen interrupted the questioning and handed him a card, which he read. While he was reading the card, Flohr was asking him questions and "hollering" at him, so he answered most of them, "No, . . . nothing," or "I don't know anything." Finally Flohr called him a liar and stated that he could not get anything out of defendant and ordered him booked. Defendant recalled having stated that the interview was voluntary but he did so because Flohr was yelling at him, and he was scared and wanted to get out of the office.

### Sufficiency of Evidence

In support of his contention that the verdict is contrary to the evidence, defendant correctly points out that the prosecution's case was based upon the theory of larceny by trick or device. He concedes that a loan of money induced by a fraudulent representation that it will be used for a specific purpose accompanied by an intent to steal constitutes larceny by trick or device (*People* v. *Lafka* (1959) 174 Cal. App.2d 312, 315 [344 P.2d 619]), but asserts that "[t]he very gist of that offense is that the property is procured by means of the false representations except for which the owner would not part with his possession of it." (*People* v. *Alba* (1941) 46 Cal.App.2d 859, 867 [117 P.2d 63].) Defendant contends that the evidence fails to show that Will would not have made the $7,000 loan had he known that defendant intended to use the money to purchase a new Cadillac rather than a home.

Defendant relies for this contention on replies made by Will to the following questions: "Q. And you lent him the money because he was a friend of yours, is that right? A. Well, in a way, yes. Q. Was there any other reason you lent him the money? A. Well, on his promise that he would pay it back, that he had it—he would pay me as quick as he got it." When asked on redirect examination what his reason was for making

the loan, he replied, ''Well, I didn't have no reason. I just—had the money and he said he would pay me a good dividend, so I let him have it.'' The effect of these answers, as contrasted with Will's positive statement that he would not have loaned defendant the money to buy a Cadillac, was a matter for the jury to determine. While perhaps the jury could have found that Will would have made the loan had defendant told him truthfully why he wanted the money, it cannot be said that the jury's implied finding that Will would not have made the loan for defendant to buy another car and that the loan was obtained by means of defendant's false representation is not supported. ''It is well settled that a loan of money induced by a fraudulent representation that it will be used for a specific purpose accompanied by an intent to steal amounts to larceny by trick and device. [Citations.]'' (*People* v. *Lafka, supra,* p. 315.)

### DEFENDANT'S EXTRAJUDICIAL STATEMENTS

 Defendant contends that the statements to Chief Flohr should have been excluded because the card which the chief read to him, and which he himself read, did not expressly state that he had a right to an attorney at the time of the interrogation. Defendant makes no claim that he did not effectively waive whatever rights were adequately set forth on the card. Defendant is correct in asserting that he was entitled to have counsel with him during the police interrogation had he asked for counsel. (*People* v. *Stockman* (1965) 63 Cal.2d 494, 500-501 [47 Cal.Rptr. 356, 407 P.2d 277]; *People* v. *Nerger* (1965) 238 Cal.App.2d 716, 721 [48 Cal.Rptr. 148].) However, he did not ask for an attorney. His claim that he was not effectively advised of this right is untenable. As hereinbefore shown, the card states, ''You are hereby advised of your right to an attorney and of your right to remain silent and of the fact that anything you say may be used against you in a court of law.'' This language is explicit. It deals with the present as well as the future. ''[R]ight to an attorney'' and ''right to remain silent'' are a clear admonition that defendant was entitled to a lawyer and to remain silent in the interrogation to follow. There is nothing in the case to warrant a conclusion that defendant did not know by the reading of the card in question that both his rights to an attorney and to remain silent existed as of the time he was about to be interrogated.

The warning given defendant was sufficient under the rule of *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].[1]

Judgment affirmed.

Agee, Acting P. J., and Taylor, J., concurred.

[1]This case was tried in May 1966. *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], was decided June 13, 1966. *Miranda* does not apply to trials commenced before June 13, 1966. (*Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)