[Crim. No. 3320.   First Dist., Div. One.   June 26, 1957.]

THE PEOPLE, Respondent, v. ALFONSO GUITERREZ, Appellant.

Elizabeth M. Claros, under appointment by the District Court of Appeal, and Claros & Lindow for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and John S. McInerny, Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant was charged with attempted burglary, in that on June 24, 1956, he attempted to enter Zukor's Clothing Store on Market Street in San Francisco with intent to commit theft. He was also charged with two prior burglaries. He pleaded not guilty to the attempted burglary, but admitted the priors. A jury found him guilty of attempted burglary and fixed the degree as second. Defendant appeals from the judgment entered on that verdict.

No direct attack is made upon the sufficiency of the evidence. Appellant does contend that several errors were committed during his cross-examination, and that the court admitted prejudicially erroneous rebuttal testimony. The attorney general makes no serious effort to refute several of the claims of error, but argues that the errors committed were not prejudicial. Thus, the basic inquiry on this appeal is to determine whether the errors were prejudicial. This, of course, requires the appellate court to consider the state of the evidence, because in most cases the importance of an error depends upon the closeness of the evidence. (*People* v. *Zemavasky*, 20 Cal.2d 56 [123 P.2d 478]; *People* v. *Fleming*, 166 Cal. 357 [136 P. 291, Ann.Cas. 1915B 881].)

The prosecution's case was established almost entirely through the testimony of Harold Miller, a special patrol officer hired by private firms to patrol their premises. One of Miller's clients was Zukor's Clothing Store near 5th and Market Streets, San Francisco. On the morning of June 24, 1956, at 5:56 a. m. Miller was on duty and was standing directly across the street from Zukor's, when he observed defendant turn into the entryway leading to the entrance of Zukor's. The doors of this store are a considerable distance from the Market Street sidewalk. The entryway is divided into two sections

by an island of glass display cases. Miller testified that at this hour of the morning that side of the street was deserted except for defendant. He noticed that defendant was then wearing a yellow sport jacket. He became suspicious when defendant entered the entryway to Zukor's store, and kept his eyes on the area. Shortly thereafter he heard glass breaking and ran across the street and into the entryway. There he found defendant, who now had the yellow sport coat over his arm. Defendant ran away. There was a large hole in the glass door of Zukor's, and there was a white powder mixed in with the broken glass. Miller testified that he started to chase defendant and was at no time more than two feet from him; that defendant violently resisted; that defendant had white powder all over his shirt and pants; that after a chase of several blocks defendant was eventually subdued with the help of a regular police officer.

The manager of Zukor's testified that he had locked the store when it was closed the night before and that defendant did not have permission to enter the store. He also testified that when he arrived at the store Sunday morning in response to a telephone call from the police he found that there was a big 4-foot hole in the front door of the store, and that there was a lot of fine white powder mixed in with the broken glass.

The third and last witness for the prosecution was a police officer who interviewed defendant after his arrest. He testified as a rebuttal witness that defendant then told him that on the night of June 23d he had taken a shot of heroin.

Defendant was the sole witness called by the defense. He testified that he had attended an all night party on June 23d, and, about 4:30 a. m., was walking towards his hotel located between 6th and 7th on Mission Street; that he crossed Market Street directly opposite 5th Street, intending to walk down 5th to Mission; that at no time did he walk in front of Zukor's, which is located a short distance from the corner of 5th Street and Market; that while he was peaceably walking along, Miller started after him yelling that he was under arrest and attempted to hit him with a blackjack; that he continued to walk along trying to ward off these blows; that he thought Miller was drunk; that several blocks later a regular police officer joined Miller and started to beat defendant and arrested him. He denied resisting arrest, breaking the glass, of being in front of Zukor's, and denied that he ever owned or wore a yellow sport jacket, or that his clothes were

covered with white powder. He admitted, however, that, based on the events surrounding his arrest, he had been charged with resisting arrest and had been convicted of that misdemeanor. He admitted that at that trial he had not told the story told on this trial, but contended that the municipal court judge had prevented him from testifying at all.

On this evidence the jury brought in a second degree attempted burglary conviction. It is apparent that, although there are some gaps in the evidence produced by the prosecution,* the evidence of guilt is strong. Appellant admits his presence in the general area, and Miller, who was practically an eyewitness, directly links appellant to the offense. It should be noted that after Miller entered the entryway of the store, and observed the broken door, and saw defendant as the only occupant of the entryway, at no time thereafter during a several block chase did he lose sight of him. There is no doubt that the glass door was broken. ■ If the jury believed that appellant was responsible for the breakage it could, of course, infer the necessary intent to commit burglary. (*People* v. *Miller*, 2 Cal.2d 527 [42 P.2d 308] ; *People* v. *Bletson*, 117 Cal.App.2d 731 [256 P.2d 614].)

With this factual background, we turn to the claimed errors committed on the cross-examination of appellant. The first of these related to the claimed use by appellant of an assumed name. The prosecution attorney asked the following questions:

"MR. CAMPBELL: Q. Mr. Guiterrez, by the way, is your name Guiterrez or Romeris? A. No. Guiterrez. Q. Not Pedro Romeris? A. No, sir. Q. You have used the name of Pedro Romeris? A. No, sir.

"MR. POSTEL [For the Defense] : I object to that as incompetent, irrelevant and immaterial.

"THE COURT: Objection overruled.

"MR. CAMPBELL: Q. Did you ever use the name of Pedro Romeris? A. Pedro, no, sir,—Pete Rodriquez.

"THE COURT: Pete Rodriquez, he says; never Pedro.

"MR. CAMPBELL: Q. You never used the name of Romeris? A. No, sir. Q. When you were arrested on February 25th, 1947, here in San Francisco on a burglary charge, didn't you give the name of Pedro Romeris? A. No, sir.

---

*The prosecution did not introduce the yellow sport jacket into evidence, nor account for its absence, nor did it produce or account for the absence of the police officer who participated in the arrest of defendant.

"MR. POSTEL: Now, if your Honor please, here at this point I move for a mistrial; I move that the question be stricken out—first, I move for a mistrial on the ground that it is a clear attempt to prejudice the jury, bringing everything in the picture here. If he has been convicted of a felony, that may be admitted—not 'When you were arrested,' et cetera.

"THE COURT: The question, as I understand it, would simply call for a denial that he has ever been known as that. However, I must caution the jury that nothing he may have done before is of any moment in this case. He is only on trial here for attempted burglary that took place on the date alleged in the Information. He is not on trial for anything else. Mr. Campbell, if he wishes, can establish the evidence that he has been previously convicted of a felony, but that is merely for the purpose of impeaching his testimony, it is not for the purpose of proving his guilt of this particular offense. I suggest, if you know of any such convictions, I suggest you ask the question directly.

"MR. CAMPBELL: That was not for that purpose. It was only for the purpose of finding out if he ever used the name of Romeris."

██ Appellant contends, and the attorney general quite properly concedes, that, in the absence of special circumstances not here present, it was improper over appellant's objections to question him about the claimed use of an assumed name. (*People* v. *Fleming,* 166 Cal. 357 [136 P. 291, Ann.Cas. 1915B 881]; *People* v. *Mohr,* 157 Cal. 732 [109 P. 476]; *People* v. *Arlington,* 123 Cal. 356 [55 P. 1003]; *People* v. *Denby,* 108 Cal. 54 [40 P. 1051].) The attorney general does "suggest" that this examination may have been "to ascertain for certain" that appellant had a prior conviction. The prosecutor, however, renounced any such intention, and the appellant had admitted the priors. Under such circumstances it was clearly error to overrule the objections to these questions. It was also error, for the same reasons, to fail to sustain the objection to the question "When you were arrested on February 25th, 1947, here in San Francisco on a burglary charge, didn't you give the name of Pedro Romeris?" ██ It is clearly improper to ask a defendant in a criminal case whether he has been arrested or in trouble with the police on prior occasions. (*People* v. *Duvernay,* 43 Cal.App.2d 823 [111 P.2d 659].)

██ It is improper to impeach a witness by raising matters, other than evidence of general reputation or conviction of a

felony, which generally tend to degrade him. (See Code Civ. Proc., § 2051.)

Immediately after the cross-examination above quoted the following occurred:

"[Mr. Campbell] : Q. Have you ever been convicted of a felony? A. Yes, sir. Q. On how many occasions? A. I guess twice. Q. What was the first occasion for? A. Burglary. Q. What was the second for? A. Burglary. Q. Both for burglary? A. Yes, sir. Q. And the second occasion was of a burglary, was in a woman's dress shop?

"Mr. Postel: I will object to that, your Honor, as incompetent, irrelevant and immaterial, improper impeachment.

"The Court: Objection overruled. He can establish the particular type of crime. You may answer the question. A. Yes, sir.

"Mr. Campbell: Q. And entry was gained by smashing a glass? A. No, sir.

"Q. It was not? A. No, sir.

"The Court: Let's not go into the details. I didn't intend to open that up.

"Mr. Campbell: All right, your Honor.

"Q. And at that time you resisted arrest also? A. No, sir.

"Mr. Postel: I object to that, your Honor, on the same ground.

"The Court: Objection sustained."

█ Appellant contends that this cross-examination violates the rule that, although when a defendant testifies he may be impeached by showing prior felony convictions, in such case only the nature of the convictions can be identified and their details are not a proper subject of inquiry. This is undoubtedly the rule, and the attorney general so admits. (See *People* v. *Braun,* 14 Cal.2d 1 [92 P.2d 402]; *People* v. *David,* 12 Cal.2d 639 [86 P.2d 811]; *People* v. *Gregor,* 141 Cal.App.2d 711 [297 P.2d 734].) █ The attorney general does suggest that some of these questions were proper to show a common scheme, plan or design for committing burglary. This may be true with respect to the questions as to whether defendant had previously burglarized a dress shop by breaking the glass door to gain entry (*People* v. *Coefield,* 37 Cal.2d 865 [236 P.2d 570]; *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924]; *People* v. *Burns,* 109 Cal.App.2d 524 [241 P.2d 308, 242 P.2d 9]; *People* v. *King,* 4 Cal.App.2d 727 [41 P.2d 593]; *People* v. *Grimes,* 113 Cal.App.2d 365 [248 P.2d 130]), but obviously this exception does not apply to the question as to

whether, on his prior arrest, he "resisted arrest also." This inquiry should not have been made. The trial court, it will be noted, sustained an objection to this question.

■ The third claimed error occurred during the rebuttal testimony presented by the prosecution. The People produced a police officer who had talked with appellant in the city prison the day after his arrest. During his examination, when he was asked to recount this conversation, he stated:

"A. . . . He said that on that Saturday night before his arrest he had been to a party. He stated he had been out in the Mission and while he had been out in the Mission he had a shot of heroin; and he stated then that after he had taken this narcotic he had gone over to the area of Vallejo and Jackson street. . . .

"Mr. CAMPBELL: You may cross-examine.

"Mr. POSTEL: May it please the Court, I will move to strike that reference to the shot of heroin, and again move for a mistrial. It was not called for; it was not proper rebuttal, it was a clearly voluntary statement.

"THE COURT: I am going to caution the jury that that statement was not called for. I am quite surprised that Mr. Campbell proceeded at this late time, it is quite prejudicial to the defendant, and I am very sorry that it had to happen under these circumstances. I am not going to grant a new trial, but I am going to caution the jury that they are not to consider that for the purpose of this case at all."

This statement given by the officer of another and independent crime was improper. Its only purpose was to degrade the defendant in the eyes of the jury. The attorney general argues that perhaps the remark can be justified on the theory that it may show a motive for the attempted burglary, namely, that appellant needed money to buy more narcotics. ■ While motive may sometimes be shown by evidence of the commission of other specific and independent criminal acts, the obvious prejudicial effect of such testimony requires its cautious use. Where the justification is remote, such testimony is inadmissible. In *People* v. *Albertson*, 23 Cal.2d 550, 577 [145 P.2d 7], it was stated: "The trial court, however, should be guided by the rule that such proof is to be received with 'extreme caution,' and if its connection with the crime charged is not clearly perceived, the doubt is to be resolved in favor of the accused, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt." ■ In the

present case, the inflammatory effect of the statement outweighs its slight relevancy to show motive. Therefore, the question should not have been asked.

■ Were these errors prejudicial? The test of prejudicial error within the meaning of article VI, section 4½ of the state Constitution has recently been restated by the Supreme Court as follows in *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243] : "That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."

■ Tested by this standard we do not think the errors singly or as a group were prejudicial. Although, as already pointed out, there are gaps in the prosecution case, and although improper questions were asked, the evidence of guilt is quite overwhelming. One who was practically an eye witness identified appellant as the culprit. Although appellant denied that he resisted arrest, the fact that he did so was demonstrated by his testimony that, based on the events of that morning, he was subsequently convicted of the misdemeanor of resisting arrest. The story told by appellant is quite unbelievable, while that told by Miller is clear, coherent and reasonable. As to several of the errors, the trial court sustained objections, and, as to others, gave specific admonitions, which helped to alleviate the impact of the errors. Under such circumstances we cannot say that it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error."

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.