[Crim. No. 8897. Second Dist., Div. Four. Mar. 23, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LARRY DEAN DAVIS, Defendant and Appellant.

Bernard Lauer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In a trial by jury, appellant, Larry Davis, was convicted of robbery in the first degree. Motions for new trial and probation were denied and he was committed to the California Youth Authority for the term prescribed by law. He appeals from the judgment.

Shortly after midnight on the morning of July 2, 1962, a man entered Del's Liquor Store at 22744 Ventura Boulevard in Woodland Hills. The man drew a gun and ordered the owner of the store, Delfine Cosio, to hand over the money in the cash register. Cosio complied, giving the man $129. Cosio identified the man as appellant Davis' codefendant, England. As England left, Cosio grabbed a revolver he kept in the store, and fired twice at a car that England was entering on the passenger side. When England entered the car, which was parked in a parking lot in front of the store, it immediately started "screeching" away. Because the car pulled away immediately after England jumped into it, Cosio concluded, some other person must have been driving. Cosio noticed another car leave the lot and pursue the get-away car. It returned in a short time, and the driver, Chuck Diets, gave Cosio the license number of the get-away car which Cosio described as "an old green car about a '47 or '48, I know; either a Chevy or a Plymouth or a Dodge . . . ."

Charles (Chuck) Diets, accompanied by Miss Jackie Sheetz, drove to Del's Liquor Store shortly after midnight on July 2.

As they entered the parking lot Diets noticed a car parked near the store. Diets remarked to Miss Sheetz that the appearance of the car made the scene look "like a Hollywood crime that you see on TV," and that it "looked like a robbery." At a distance of approximately 10 feet from the car Diets observed appellant behind the wheel. The lot was illuminated by a large light and appellant was not wearing a hat or anything over his face. When he looked into the store Diets saw a man with a gun. Cosio was handing the man a folded pile of money. After making this observation Diets drove to the other end of the parking lot, and waited. The gunman ran from the store with Cosio following, the latter, firing several shots. When the get-away car drove off, Diets followed it, getting as close as 25 or 30 feet, and Miss Sheetz wrote down the license number. Diets then returned to the liquor store and gave the license number to Cosio.

Jackie Sheetz corroborated the testimony of Diets. When Diets had remarked that the car "looked like a get-away car," she testified, "I just sort of laughed and looked inside the car." Appellant was sitting in the car. She saw him for a period of four or five seconds, seeing his whole face so that she could unequivocally identify him.

On July 11, 1962, at approximately 10 p.m., Police Officer Selby, of the robbery detail, and his partner, were driving past an old apartment building on the northeast corner of Winnetka and Sherman Way in Reseda, when they observed appellant and another man, later identified as Eddie Hoy, walking from the apartment toward the street. Appellant and Hoy looked in the officers' direction and then turned back toward the apartment house. The officers pulled around the corner, parked the car, walked back and placed appellant under arrest. A short time later Officer Selby arrested England in the same vicinity, as he drove up in an old automobile, later identified as the get-away car by Cosio, Sheetz and Diets from two photographs offered by the People (Exhs. 2 and 3.) The car had bullet holes in the fender and was registered to England. Selby was directed by England to a location across the street from the apartment house (where England lived), where he pointed out a gun secreted alongside a fence, a .32 caliber revolver loaded with six shells. Cosio identified it as the one England had used in the robbery.

Appellant testified in his own behalf. On July 11 he and his friend, Eddie Hoy, went to the apartment building at

Sherman Way and Winnetka to meet Armand Stevens, an acquaintance, who lived in the apartment at that address. Stevens, a mechanic, was to check over an automobile belonging to defendant. However, Stevens was not at home, and, as they were leaving, appellant was arrested. Appellant admitted he was acquainted with England but denied participating in the robbery and denied driving the get-away car. He was at home in bed at 12:05 a.m. on July 2. Although he could not remember when he arrived home, July 1 was a Sunday, and it was his habit to be in bed by 10 o'clock on work nights. On July 2 he went to work as usual. Appellant further testified that he lived with his parents, was employed in cabinet work earning $71 net per week and, that he had money of his own from his earnings during the month of July.

On cross-examination appellant admitted that he had known England for about a year and that he knew England lived in the apartment where the arrest took place. He denied, however, that he had ever driven England's car. He also denied, in response to questioning by the prosecution, that he was under the influence of narcotics at the time of his arrest.

Evelyn Maccorkell, appellant's mother, testified that her son was living with her in July 1962. She could not recall at what time appellant came home on the night of July 1, but she knew it was his habit to come home early and go to bed between 9:30 and 10 o'clock when he had to work the next day.

Officer Selby, called as a rebuttal witness, testified, over objections, that he had been a member of the police department for 15 years and, although he had never worked in the narcotics division, he had seen persons under the influence of narcotics on a number of occasions. At the time he arrested appellant he formed the opinion that appellant was then under the influence of narcotics.

Appellant contends that he was denied a fair trial because the trial court erroneously permitted the scope of his cross-examination to include matters not brought out on his direct examination and thereafter allowed rebuttal evidence to prove such matters under the guise of impeachment. In particular, appellant asserts that it was error to permit the prosecution to initially ask him on cross-examination, over objections, whether he was under the influence of narcotics at the time of his arrest, and then, upon his denial, to permit rebuttal evidence in the form of the arresting officer's testimony that in his opinion appellant was then under the influence of narcotics. Appellant argues that this subject was an im-

material or collateral matter, and consequently, that his negative answer on cross-examination could not be challenged by rebuttal testimony.

During the course of his examination on direct, after denying that he participated in the robbery, defendant testified, in effect, as follows: He lived with his parents; he had been employed as a cabinet worker since January, earning $71 take-home pay per week; and that he had money of his own in July. On cross-examination, prior to asking appellant if at the time of his arrest he was under the influence of narcotics, the district attorney called appellant's attention to his testimony that he was living at his parents' home and earning $71 a week. Defense counsel objected to the district attorney's question and made a motion for a mistrial on that ground. The court, in proceedings held outside the presence of the jury, denied the motion for mistrial, ruling that, under the circumstances, the district attorney had the right to prove if he could that defendant ''had need for more money than his normal requirements.'' Thereafter, appellant denied he was under the influence of narcotics, and Officer Selby was called in rebuttal. The court instructed the jury that it was not to consider the question asked to in any way suggest that defendant was engaged in narcotic traffic of any kind, that it ''was asked for a specific purpose as to credibility on another point.'' In his argument to the jury the district attorney pointed out that, he had asked the question and contradicted appellant's denials, only to attack the ''image'' appellant attempted to create that ''he was a hard working young man'' who ''has no need of robbery.''

The People maintain that the trial court properly permitted the cross-examination and rebuttal testimony. The challenged question on cross-examination, they argue, was asked to offset the impression conveyed by appellant's testimony on direct examination, namely, that he had enough money to satisfy his normal needs and thus no motive to commit a robbery, and, as a foundation for showing on rebuttal that he had abnormal needs; and that, under such circumstances, the cross-examination and the rebuttal evidence offered, were proper.

The hypothesis that appellant had an unusual need for money must be based upon two assumptions of fact, both of which the court was asked to infer from the fact that appellant was observed under the influence of narcotics on one occasion. The first is that appellant was a habitual user, and the second, is that he was using an expensive

narcotic, such as heroin. ■ It is common knowledge that marijuana is cheap. It can be home-grown in back yards and flower pots or carried in from Mexico without straining the finances of a $71-per-week wage earner. Not all users of the more expensive drugs are hooked by an expensive habit. The inference that this defendant had an expensive habit is, therefore, tenuous at best.

On the other hand, the impact of this evidence upon a jury of laymen would be catastrophic to a defendant. The inference which the prosecution most assuredly sought to have the jury draw from such evidence, was that appellant habitually committed a felony (Health & Saf. Code, § 11500), which the law and the public generally regard as one of extreme gravity and deserving of heavy punishment. It cannot be doubted that the public generally is influenced with the seriousness of the narcotics problem in this community, and has been taught to loathe those who have anything to do with illegal narcotics in any form or to any extent.

■ The rule applicable here is that, where evidence of the commission of another offense tends only remotely or to an insignificant degree to prove a material fact in the case, it is inadmissible. For examples of convictions which were reversed for violation of this basic rule of fair trial, see *People* v. *Albertson,* 23 Cal.2d 550, 576 [145 P.2d 7] ; *People* v. *Roof,* 216 Cal.App.2d 222 [30 Cal.Rptr. 619] ; *People* v. *Ozuna,* 213 Cal.App.2d 338 [28 Cal.Rptr. 663] ; *People* v. *Vanderburg,* 184 Cal.App.2d 33 [7 Cal.Rptr. 287] ; *People* v. *Channell,* 136 Cal.App.2d 99 [288 P.2d 326].

This case is not like *People* v. *Westek,* 31 Cal.2d 469 [190 P.2d 9], where the prosecution was allowed to offer evidence of other offenses as direct rebuttal of testimony given by the defendant. ■ Here, appellant did not raise any issue as to his use or nonuse of narcotics. The prosecution injected the question, first by cross-examination of appellant, over objection, and then by putting on the officer to contradict the denials made by appellant in his cross-examination. ■ It is elemental that improper cross-examination of a defendant could not lay a foundation for the introduction of the inadmissible matter in rebuttal.

■ The facts of this case readily demonstrate the prejudicial effect of suggesting that appellant was a narcotics user. The People's case rested entirely upon the testimony of two persons in a passing automobile who identified appellant as the man they had seen behind the wheel of the get-

away car. They had never seen appellant before, and they saw him for only four or five seconds at that time. The robbery was at night. Appellant was arrested several days later. The record does not show what led the police to seek out appellant and arrest him. Appellant and his mother testified that he was at home in bed at the time of the robbery. He admitted that he was acquainted with the gunman who held up the liquor store, but there is no evidence, other than the witnesses in the passing car, to connect him with this crime. If those witnesses were mistaken in their identification, as people sometimes are, appellant is innocent. The whole case turns upon the credibility of these four witnesses. The law entitled appellant to stand before the jury presumptively innocent and of good character. In characterizing him as a narcotics user, a charge he was unprepared to meet except by his own denial, the prosecution branded him as a habitual lawbreaker, a loathsome, unworthy person, predisposed to rob or steal to support his habit. Appellant is entitled to have the conflicting evidence reweighed without that kind of handicap. In view of this conclusion we need not discuss a further contention raised by appellant.

The judgment of conviction is reversed.

Files, P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 19, 1965.