Charles Lee POWELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 44634.

Court of Criminal Appeals of Texas.

March 29, 1972.

Robert J. Kuhn, Lowell Clayton, Austin, for appellant.

Robert O. Smith, Dist. Atty., Michael J. McCormick, Asst. Dist. Atty., Austin, and Jim D. Vollers, State's Atty., Austin, for the State.

ODOM, Judge.

This appeal is from a conviction for the offense of felony theft. Punishment was assessed at five years.

In his sole ground of error appellant contends the trial court erred in admitting, over objection, evidence which tended to show he committed an extraneous offense.

Gene Elliott testified that he was standing in front of the radiator shop were he was employed, on West 2nd Street, in Austin, on the afternoon of April 28, 1970, when he observed a certain described 1961 or 1962 white Buick auto parked beside a lawn mower display in the driveway of the B. F. Goodrich store directly across the street. He observed appellant bent over the trunk of said automobile ". . . like he was putting or taking something out of it." Elliott testified he then saw two white handles of a lawn mower or lawn mowers sticking out of the trunk of the car. According to Elliott, appellant tied the trunk down, got in the car and sped away at a fast rate of speed. After noticing two lawn mowers missing from the display and having seen two handles sticking out of appellant's car, Elliott walked across the street to the B. F. Goodrich store to ask if they had sold two lawn mowers and learned that no such sale had been made. C. F. Cofer, the manager of the B. F. Goodrich store, testified that an inventory was taken after Elliott's report and it was determined two lawn mowers with white handles were missing. The license number and description of the car appellant drove was given to police.

Sergeant Bob Simpson, of the Austin Police Department, testified that he located the automobile identified as the one used by appellant on April 28, 1970 (the date of the instant offense). Then the record reflects the following:

"Q. (By the prosecutor) What day was it you recovered the car, sir?

"A. This was on the 29th.

"Q. Did you *sometime thereafter* have occasion to see this defendant, Mr. Charles Lee Powell, sir?

"A. I did.

"Q. Where was that, sir?

"A. At the Austin Police Department.

"Q. Did you have occasion, sir, *on that date*, accompanied by another officer, to take a look at Mr. Powell's arms?

"A. I did.

"Q. Did you see anything there on them, sir?

"A. I did.

"Q. Would you state for the Court and jury what it was, sir?" (Emphasis supplied.)

An objection was made at this juncture; the jury was retired; and the testimony was developed as to what the officer observed on appellant's arm. Arguments were then heard by the court on the admissibility of such evidence and the court stated:

"It's clearly an extraneous offense which is not normally admissible to the jury. However, there are certain exceptions, intent, motive, state of mind. This is offered to show that he was an addict of some sort, and as an addict he must support his habit by stealing; . . .."

The court overruled the objection. The jury was then returned to the box and the following is revealed from the record:

"Q. . . . On the day in question at which you saw this defendant at the police station, sir, did you have occasion to look at his arms, sir?

"A. Yes, sir, I did.

"Q. Now, sir, did you see anything on them, sir?

"A. Yes, sir, I did.

"Q. What did you see, sir?

"A. I saw needle tracks and holes, one fresh.

"Q. Now, sir, how long have you been a police officer?

"A. A total of almost 20 years.

"Q. Prior to this time have you ever seen marks similar to those, sir?

"A. Yes, sir.

"Q. And what are they associated with, sir?

"A. With narcotic addiction.

"Q. When you looked at the defendant's arm on that day, sir, did you state you saw blood on it?

"A. Yes, sir, one track. One place still had a little seepage of fresh blood.

"Q. When you say 'track,' sir, would you explain to the jury what you mean, please, sir?

"A. Yes, sir. A track is terminology that we use when we're talking about— When an addict gives himself a shot in the larger vein, usually in the armpit, they constantly move down just a little bit to get away from the soreness, and it leaves scars, in other words, scar tissue. After it gets to be some length it's known as a track."

In Young v. State, 159 Tex.Cr.R. 164, at page 165, 261 S.W.2d 836, at page 837, this court stated:

"The general rule in all English speaking jurisdictions is that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime, or for being a criminal generally. The rule is now deemed axiomatic and is followed in all jurisdictions."

See also, Chandler v. State, Tex.Cr.App., 417 S.W.2d 68; Hafti v. State, Tex.Cr. App., 416 S.W.2d 824; Taylor v. State, 138 Tex.Cr.R. 161, 134 S.W.2d 277; Williams

v. State, 125 Tex.Cr.R. 410, 68 S.W.2d 501; 23 Tex.Jur.2d, Evidence, Sec. 194, page 294.

There are exceptions to the general rule. See 23 Tex.Jur.2d, Evidence, Sec. 195, at page 300, where it is written:

"Evidence of the commission of other crimes by the accused is admissible as part of the res gestae or to show identity of person or crime, intent, motive, scienter, system, and malice. Evidence of other crimes is also admissible to discredit the accused when he testified in his own behalf, or to show his failure to have reformed, or to controvert a defensive theory advanced by him. These exceptions to the general rule prohibiting evidence of other crimes are discussed in greater detail immediately hereafter. It must be remembered, however, that even though evidence of another crime may be relevant to the instant proceeding, such evidence should not be admitted unless the commission of the other crime is clearly proved and the accused is shown to have been its perpetrator."

See also, Bryant v. State, Tex.Cr.App., 471 S.W.2d 66; Owens v. State, Tex.Cr.App., 450 S.W.2d 324.

■ Another exception to the general rule is when such evidence shows flight of the accused. e g. Woods v. State, Tex. Cr.App., 480 S.W.2d 664 (1972); Thames v. State, Tex.Cr.App., 453 S.W.2d 495; Cox v. State, 170 Tex.Cr.R. 128, 338 S.W.2d 711; Israel v. State, 158 Tex.Cr.R. 574, 258 S.W.2d 82.

In the case at bar Witness Elliott made positive identification of the appellant.

The appellant did not testify nor offer any defense. There was positive proof of the state's case. No issue as to identity, intent, scienter, system, design, or malice was raised by cross-examination or otherwise. There was no defensive theory to rebut and this was not a circumstantial evidence case.

The statement in the instant case: "I saw needle tracks and holes, one fresh," which tended to show an extraneous offense, was not part of the res gestae. This case is unlike Gomez v. State, Tex.Cr.App., 470 S. W.2d 871, and Feather v. State, 169 Tex. Cr.R. 334, 333 S.W.2d 851, where the accused in each case was charged with the unlawful possession of narcotics and the observations were made at the time of the offense or arrest. Gomez v. State, supra, held that the physical condition of appellant at the time of the offense is material in rejecting the contention that the admission of the testimony that appellant's left arm bore infected needle tracks was error. Feather v. State, supra, held that testimony of "punctures on appellant's arm" observed at the time of the search of appellant's bedroom was not error.

Further, this case is unlike Riley v. State, 168 Tex.Cr.R. 417, 328 S.W.2d 306, wherein the accused was charged and convicted of the offense of burglary. The defendant therein was seen by the arresting officer inside a pharmacy at 1:00 A.M. As the officer attempted to enter the building, the defendant left through a side door carrying two gallon jugs, one of which was shown to be full of paregoric and the other, half-full of Brown's mixture, both of which contained opium. A search of the defendant at the scene revealed that he had seven boxes of hypodermic needles in his coat pocket. During the trial the defendant testified and was cross-examined as to whether he was a narcotic addict. Therein this court held:

"Under the State's evidence showing appellant's possession of the hypodermic needles and the two gallon jugs containing a narcotic drug which were taken from the burglarized building such interrogation by State's counsel was permissible to show a motive of the appellant for the commission of the crime. See 18 Tex.Jur. par. 37, page 73 and cases there cited."

In Riley there was clearly an affirmative link connecting the burglary and narcotics.

**98**

In United States v. Mullings, 364 F.2d 173 (2d Cir. 1966), the court reversed a theft conviction because the trial court considered evidence that the defendant used narcotics and stated, at page 175:

"The government contends that, apart from proving the falsehood of Mullings' statements that he did not use narcotics and earned $150 a week, the testimony that Mullings in fact used narcotics and that his take home pay was under $65 per week was relevant to the motive for his actions at the terminal and therefore properly received. Although a *lack* of money is admissible to show a possible motive for some crimes, 2 Wigmore, Evidence § 392 (3d ed. 1940), in this case the chain of inferences is too speculative. There was no evidence how often Mullings took narcotics, or what the maintenance of such a habit would cost him, or that he was unable to obtain narcotics because of a shortage of money. In effect the evidence only shows that he *might* have lacked money and therefore might have had a motive to commit the crime—from which the judge inferred that he did so. We think this is too remote; the need for money being speculative the motivation can be no better. Whatever probative value this evidence had, it was outweighed by its prejudicial effect. It would place far too much stress on the mere fact of his addiction alone."

The testimony in the case at bar was admitted to show motive. The state contends "that the evidence of appellant's addiction would tend to show motive for theft. That is, a narcotic habit requires money to support it and committing the theft would further appellant's habit."

■ We agree with the reasoning in United States v. Mullings, supra. The chain of inferences is too long and contains too many gaps to allow the introduction of evidence of needle marks alone to show possible motive for theft. The prejudicial effect of such evidence far outweighs any probative value it might have. To admit such testimony without showing some affirmative link between the theft and narcotics would show only that the accused is "a criminal generally". This, the general rule heretofore quoted prohibits. Young v. State, supra.

For the reasons stated, the judgment is reversed and the cause remanded.