Kenneth P. GOULD, Appellant,

v.

STATE of Alaska, Appellee.

No. 3261.

Supreme Court of Alaska.

June 2, 1978.

F. P. Pettyjohn, Pettyjohn & Pestinger, Anchorage, for appellant.

John Scukanec, David J. Walsh, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

---

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

RABINOWITZ, Justice.

Appellant, Kenneth P. Gould, was found guilty after trial by jury of armed robbery in violation of AS 11.15.240 [1] and was sentenced to a term of imprisonment for 12 years. We have concluded that Gould's conviction must be set aside, and the case remanded for a new trial.

On April 24, 1976, at approximately 1:00 p.m., Dixie Gipe was working as a sales clerk in the Phase I clothing store located in Anchorage, Alaska. A white male entered and Ms. Gipe asked if she could help him. After he was shown to a display of Levi jackets, he approached the cashier's counter, placed a piece of clothing over his arm, exhibited what appeared to be the barrel of a gun and demanded she open the register. Her supervisor, Vera Grimes, sensing something amiss came to the register and told the robber to take all the money and leave. The robber then left with approximately $550 in currency. Officer Marsters of the Anchorage Police Department responded to a call from the store, talked with Grimes, Gipe and Peggy Letts, another employee, and broadcast a description of the robber as an adult white male, 68 inches in height, slim, long black curly hair with a moustache, dark black suede jacket with a Harley-Davidson emblem on the back and motorcycle boots.

Officer Stambaugh of the Anchorage Police Department came on duty at 4:00 p.m. and became aware of the robbery and the robber's description. Suspecting Gould, he put together a collection of five mug shots from the department's files and combined them in a photographic lineup with a picture of Gould taken from his driver's license. Officer Stambaugh then proceeded to the store where the lineup was shown to Ms. Grimes who identified Gould as the robber. Ms. Letts was also shown the lineup and stated that the picture of Gould most resembled the robber but that she could not positively identify him. Two days later, Officer Otte of the Anchorage Police Department showed the lineup to Ms. Gipe, who also identified Gould as the perpetrator of the robbery.

On April 30th, Officer Walker of the Anchorage Police Department observed Gould at approximately 14th and Fairbanks Avenues in Anchorage. He stopped Gould and arrested him. Gould was wearing jeans and a Levi jacket with a Harley-Davidson emblem on the back. Later that day, Gould was interrogated by Officer Otte. During the course of this interrogation, Gould stated he had a $300 a day heroin habit, "hustled" for his funds, and lived with a woman who had applied for welfare. At the time, Officer Otte observed needle marks on Gould's arms. On May 5th, a corporeal in-custody lineup was held and Dixie Gipe identified Gould as the robber.

Subsequently, Gould filed motions to suppress all evidence relating to the photographic lineup and all evidence relating to the corporeal lineup. The motions were denied. Thereafter, Gould's counsel filed a petition for review seeking review of the superior court's denial of the suppression motions. In its answering brief, the state stipulated that it would not use evidence of the in-custody corporeal lineup since Gould's attorney had not been present.

After trial had commenced, Gould moved for a protective order to prevent the prosecution from introducing the statements made by Gould to Officer Otte relating to Gould's lifestyle and heroin addiction. The prosecution stipulated to the order but reserved the right to reopen the issue if it determined it desired to use this evidence.

Prior to the conclusion of its case-in-chief, the prosecution decided to introduce evi-

1. AS 11.15.240 provides:

 *Robbery.* A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

dence of Gould's heroin addiction and lifestyle. After extensive argument out of the presence of the jury and over defense counsel's objection, the superior court ruled the evidence admissible. Officer Otte was then called and testified to the statements Gould had made to him at the time of his arrest. More particularly, Officer Otte related that Gould had stated he had a $300 a day heroin addiction, that he was not working, that he "hustled" for money and that he was living with Barbara Wineck, who had applied for welfare. Officer Otte further testified that at the time he interrogated Gould he observed what appeared to be fresh needle marks and scar tissue on the underside of Gould's forearms. In final argument, the prosecutor alluded to Officer Otte's testimony concerning Gould's lifestyle, heroin habit and lack of funds. The prosecution argued that these factors established a motive for the robbery.[2]

In his first specification of error, Gould asserts that the superior court erred in admitting the testimony concerning the pretrial photographic identifications, contending the photographic lineup employed by the police was so impermissibly suggestive as to violate constitutional standards of due process. In *Buchanan v. State*, 561 P.2d 1197, 1204 (Alaska 1977), we held that "[a] procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police."[3] In *Buchanan*, since three of the six photographs used in the lineup matched the victim's description of the assailant, we concluded "that the photographic lineup was not so suggestive as to create 'a very substantial likelihood of irreparable misidentification.'"[4] *Id.* at 1205. Similarly, in *Noble v. State*, 552 P.2d 142, 146 (Alaska 1976), we stated that although Noble had the longest hair of the six men portrayed in a photographic lineup and the police knew that the victim had emphasized his assailant's long hair, "the photos [did] not depict men so different in appearance that Noble's picture [could] be said to be truly distinctive among the six." (footnote omitted) In holding that the photographic lineup in *Noble* was not so suggestive as to create a substantial likelihood of irreparable misidentification, we noted that the lineup was conducted while the incident was still fresh in the mind of the victim and that he "had ample opportunity at the time of the crime to observe the features and physiognomy of his assailant."[5] *Id.*

Our examination of the photographs used in the case at bar to make up the questioned photographic lineup has convinced us that it was not so suggestive as to create "a very substantial likelihood of irreparable misidentification."[6] The description given the police by the witnesses to the

2. In regard to this questioned evidence, the jury was instructed:

Evidence was introduced that the defendant was using heroin on or about April 30, 1976. This evidence may only be considered by you in determining whether the defendant had a motive for robbery. You must not be prejudiced against the defendant because he may have used heroin in April of 1976.

3. Cf. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1206 (1967) (footnote in original).

4. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247, 1253 (1968) (footnote in original).

5. In *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972), the United States Supreme Court, in dealing with a pretrial police station showup, not a photographic lineup, held that it must consider whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *See Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

6. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253 (1968); *Buchanan v. State*, 561 P.2d 1197, 1205 (Alaska 1977); *Noble v. State*, 552 P.2d 146 (Alaska 1976).

robbery matches at least three of the persons depicted in the photographic lineup. We also deem it of significance that the prosecution witnesses had ample opportunity to observe the robber during the time he was on the premises of the Phase I clothing store.[7]

Gould's next specification of error concerns the admissibility of evidence of his heroin addiction introduced by the state in an attempt to show a motive for the robbery. Gould contends that the evidence was more prejudicial than probative and amounts to reversible error.

This court previously has held that a mere association with heroin, "without more," is inadmissible for the purpose of proving motive or intent. *Eubanks v. State*, 516 P.2d 726, 729 (Alaska 1973). In *Eubanks*, the state introduced evidence that defendant had purchased heroin from proceeds obtained by pawning items forming the basis for a grand larceny charge. We explained:

> Purchase of heroin, without more, does not advance the inquiry into the defendant's state of mind when he participated in pawning the items . . . . Drug users may sometimes steal in order to support their habit; people who steal may sometimes be drug users. However, to introduce a possible drug association without more in order to indicate that the

defendant must be a thief requires precisely the type of leap of faith the evidence rules have been designed to prevent. *Id.*

■ We have held evidence of prior narcotics transactions admissible "on the issue of motive for homicide when the accused's prior drug dealings with the deceased were tinged with acrimony and anger." *Id.*, citing *Gafford v. State*, 440 P.2d 405, 408 (Alaska 1968), *cert. denied*, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969). In *Gafford*, we stated that "in our view evidence of [the victim's] refusal to assist appellant in disposing of narcotics was relevant to the issue of motive, viz., that appellant was angry or disgusted with [the victim] because of his unequivocal refusal to help in the disposal of narcotics." *Id.* Other jurisdictions have allowed evidence of drug use or addiction circumstantially to prove motive when the crime charged involved the theft of narcotics.[8] Thus, evidence of drug use or addiction is relevant to motive when there exists some affirmative link between the crime and the use or addiction. On the other hand, "[t]o admit such testimony without showing some affirmative link between the theft and narcotics would show only that the accused is 'a criminal generally.'" *Powell v. State*, 478 S.W.2d 95, 98 (Tex.Crim.App.1972).[9]

---

7. We further note that Gould was positively identified from this photographic lineup within five hours to two days after the robbery.

8. *Eubanks v. State*, 516 P.2d 726, 729 (Alaska 1973), citing *State v. Howell*, 3 Or.App. 484, 474 P.2d 778 (1970); *Riley v. State*, 168 Tex. Cr.R. 417, 328 S.W.2d 306 (1959); *People v. Rodis*, 145 Cal.App.2d 44, 301 P.2d 886 (1956).

9. In *People v. Bartlett*, 256 Cal.App.2d 787, 64 Cal.Rptr. 503, 508–09 (1967), the defendants were tried and found guilty of second degree burglary. At trial, a police officer was permitted to testify at great length, over defense objection, that at the time of defendants' arrest they were under the influence of narcotics. The officer observed the defendants' condition, including needle marks on the inside of their elbows. The officer testified that during the later interview he was of the opinion that the defendants were undergoing heavy withdrawal symptoms. The officer was permitted to testi-

fy that in his opinion the defendants had been heavy users of narcotics, with a habit of $25 to $50 a day. The California court, in reversing the convictions, noted that without the evidence of narcotics use or addiction there existed a "reasonable probability that a different verdict would have been reached had the objectionable evidence had been excluded." *Id.*, 64 Cal.Rptr. at 509. The court held:

> Such evidence should have been excluded because its tenuous probative value to show motive was far outweighed by its tendency to incite a jury to resolve the issue of guilt or innocence on defendants' character, rather than on the proof of the essential elements of the crime. *Id.*

A similar situation existed in *People v. Davis*, 233 Cal.App.2d 156, 43 Cal.Rptr. 357 (1965), in which the defendant was convicted of first degree robbery. At trial, the state introduced evidence of defendant's narcotics use in an attempt to prove motive for the robbery. The

In *Powell v. State*, 478 S.W.2d 95 (Tex. Crim.App.1972), the defendant was convicted of theft. Testimony was admitted at trial of an officer's observance of "needle tracks" on the defendant's arm and that such marks were associated with narcotics addiction. The testimony was admitted to show a motive for the theft. The state contended that " 'a narcotic habit requires money to support it and committing the theft would further appellant's habit.' " *Id.* at 98. The Texas court held:

> The chain of inferences is too long and contains too many gaps to allow the introduction of evidence of needle marks alone to show possible motive for theft. The prejudicial effect of such evidence far outweighs any probative value it might have.

*Id.*

■ In the case at bar, there is an absence of any "affirmative link" between the robbery and Gould's alleged heroin addiction. The only possible relevance of this evidence goes to the hotly contested issue of identification. The state's argument for relevance is based on reasoning that because Gould was unemployed and had a $300 a day heroin habit, he had to commit the robbery to support his habit. Like the court in *Powell v. State*, we find the proffered inference too attenuated and possessing "too many gaps" to show motive and thus the identity of the robber.[10]

Since we have concluded that it was error on the superior court's part to admit evidence of his heroin addiction, we must determine whether such error was prejudicial or harmless. Under the harmless error test articulated in *Love v. State*,[11] we hold that the error in question was prejudicial.

Excluding the erroneously admitted evidence as to Gould's heroin addiction, the record indicates that the major witnesses for the prosecution were eye witnesses to the robbery who identified Gould from a

court there noted that the other evidence adduced at trial turned on the credibility of four witnesses and that

> [t]he law entitled appellant to stand before the jury presumptively innocent and of good character. In characterizing him as a narcotics user, a charge he was unprepared to meet except by his own denial, the prosecution branded him as a habitual lawbreaker, a loathsome, unworthy person, predisposed to rob or steal to support his habit. Appellant is entitled to have the conflicting evidence reweighed without that kind of handicap.

*Id.*, 43 Cal.Rptr. at 361.

Two other California cases have found admission of such evidence to be error but not sufficiently prejudicial to require a reversal. In *People v. Guiterrez*, 152 Cal.App.2d 115, 312 P.2d 291, 295 (1957), the defendant was convicted of attempted burglary. Evidence was allowed that following his arrest the defendant stated he had had a "shot of heroin." The court rejected the view that such evidence was admissible to show motive, but in view of the overwhelming evidence of guilt, the error was held to be non-prejudicial. In *People v. Enriquez*, 190 Cal.App.2d 481, 11 Cal.Rptr. 889 (1961), *cert. denied*, 368 U.S. 1002, 82 S.Ct. 634, 7 L.Ed.2d 540 (1962), evidence of narcotics addiction was introduced in a trial where the charge was murder and kidnap with intent to commit robbery. The court held it was error to introduce the evidence; but in view of the abundance of evidence of guilt, the error did not require reversal.

10. In *Kugzruk v. State*, 436 P.2d 962, 967 n.20 (Alaska 1968), we quoted Judge Bazelon's statement in *Harper v. United States*, 99 U.S. App.D.C. 324, 325, 239 F.2d 945, 946 (1956):

> [T]he rule is that evidence of other offenses is admissible when substantially relevant to the offense charged; inadmissible when its relevance is insignificant; and, in borderline cases, admissible when its relevance outweighs the undue prejudice that may flow from it. [citations omitted]

11. In *Love v. State*, 457 P.2d 622, 631 (Alaska 1969), we adopted the standard for determination of harmless error in non-constitutional issues as follows:

> "But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557, 1566–67 (1946).

Thus, using the *Love* standard, we must determine whether the erroneously admitted evidence had a substantial influence on the verdict so as to amount to reversible error.

photographic lineup compiled by Anchorage police. Gould was subsequently identified at trial by the same witnesses. Four witnesses for the defense testified that Gould had a full beard the day of the robbery and therefore did not match the description given by the identifying witnesses. One of the defense witnesses testified that Gould was with her during the time the robbery occurred.[12] Subsequently, during their deliberations, the jury asked to rehear basically all of the testimony they had heard in the trial. After the court asked the jury to limit its request for replay, the jury asked to hear the testimony of one of the eyewitnesses to the robbery and the testimony of two of the defense witnesses.[13] One of these defense witnesses was the person who had testified that Gould had been with her during the time the robbery occurred.[14]

Given the foregoing cleavage in the identification testimony in the record, we cannot say with fair assurance that the erroneous admission of evidence of Gould's heroin addiction did not have a substantial impact on the jury's deliberations.[15] We thus conclude that the superior court's admission of this evidence of heroin addiction, in the particular factual context of this record, was prejudicial error requiring that Gould's conviction be set aside and the matter remanded for a new trial.[16]

Reversed and remanded for a new trial.

**BURKE, Justice, dissenting in part.**

I disagree with the holding that it was error to admit evidence concerning Gould's heroin addiction. The issue of identity was hotly contested; during trial a sharp conflict developed in the evidence as to whether Gould was, or could have been, the robber. Officer Otte's testimony tended to establish more than the mere fact of Gould's addiction. According to Otte, Gould not only stated that he was an addict, but that he suffered from a $300 a day habit, was not working at the time of the robbery, and was living with another individual who was apparently without funds. Such evidence, if believed, established a motive for Gould to commit the robbery with which he was charged. Such a motive would, in turn, provide evidence of the robber's identity.

In *Eubanks v. State*, 516 P.2d 726 (Alaska 1973), this court noted,

> At no time was it indicated that [Eubanks] was an addict in need of drugs, that he used drugs often, or that drugs had been discussed prior to the events of that day.

516 P.2d at 729. Thus, we held that in a prosecution for grand larceny it was error to admit evidence that after the alleged larceny the defendant purchased heroin with the proceeds, saying:

---

**12.** Barbara Wineck was called by appellant. She testified that on the day of the robbery Gould had a full beard. She further testified that his beard was shaved off on Monday, April 26, two days after the robbery at Phase I. Laura Cannon, Gould's sister, testified that appellant "always" had had a full beard, and that he had the beard less than a week before he was arrested on April 30, 1976. Lisa Hiler was called for the defense. She testified that Gould had a full beard on Sunday, April 25, and did not have one the following Tuesday, April 27.

Charles Dunnagan testified he had an interview with Vera Grimes at which she stated the robber was clean-shaven except for a moustache.

Elizabeth Payton was called by the defense. She testified that Gould had come to her apartment at approximately 11:00 a.m. on the day of the robbery and that Gould had stayed with her until 3:00 p.m. or 3:30 p.m. on April 24. She testified that appellant had attempted to repair a bicycle for her. She stated Gould had a

beard on that day but did not have a beard a few days later.

**13.** The jury requested to hear the replay of Gipe's testimony, as well as the testimony of defense witnesses Payton and Cannon.

**14.** See note 12, *supra.*

**15.** As Professor Wigmore has succinctly stated:

The deep tendency of human nature to punish, not because our victim is guilty this time, but because he is a bad man and may as well be condemned now that he is caught, is a tendency which cannot fail to operate with any jury, in or out of court.

I. J. Wigmore, Evidence in Trials at Common Law § 57, at 456. (3d ed. 1940).

**16.** In light of the conclusion that a new trial is necessary, we shall not address Gould's claim that the sentence he was given by the superior court was excessive.

[T]o introduce a possible drug association without more in order to indicate that the defendant must be a thief requires precisely the type of leap of faith the evidence rules have been designed to prevent. Because the prejudicial content of the evidence of possible prior misconduct far outweighs its minimal probative value, the evidence is inadmissible for the purpose of proving motive or intent.

*Id.* [footnote omitted]. In view of Gould's need for drugs and his lack of funds to procure the same, I consider *Eubanks* clearly distinguishable from the case at bar. Given the conflicts in the evidence bearing on the issue of identity and the court's cautionary instruction that such evidence could be considered only as it might tend to establish motive, I fail to agree that there was error.

Otherwise, I concur.