**William TOOMER, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–4752.

Court of Appeals of Alaska.

March 3, 1995.

Rebecca Wright, Asst. Public Defender, Barrow, and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia L. Herren, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

William Toomer was convicted of second-degree theft, AS 11.46.130(a)(1), following a jury trial presided over by Superior Court Judge Michael I. Jeffery in Barrow. Toomer appeals, arguing that the trial court erred in allowing the state to present evidence that Toomer had been seen using cocaine. We find that the trial court erred in admitting the disputed evidence, and we reverse.

Toomer was convicted of stealing $20,165.26 from his employer, the Ukpeakgvik Inupiat Corporation Construction, Inc. (UICC). UICC is an Anchorage construction company, with the majority of its revenue coming from commercial building maintenance and construction. In addition, UICC has a facility in Barrow, which, among other things, operates a window plant and a body shop that does both light and heavy equipment repair work and handles heavy equipment rentals.

Prior to June 1990, most of the paperwork and receipts generated by operation of the Barrow facility were handled by UICC's Anchorage administrative office. In June of 1990, UICC asked Toomer—an Anchorage employee—to travel to Barrow in order to review the company inventory there. Toomer extended his stay in Barrow because he was assigned additional responsibilities. In

August of 1990, he was instructed to review the petty cash procedures and to do a cash count. By November of 1990, Toomer had assumed the duties of Barrow administration manager for UICC. Sometime thereafter, Toomer requested that Barrow customers pay for Barrow UICC services in Barrow, instead of sending their payment checks to the Anchorage office as they had previously done. As a result, Barrow receipts increased dramatically. Some of the Barrow customers paid for UICC services in cash, and some of that cash was kept in the petty cash fund.

On January 30, 1991, Toomer became responsible for overseeing the petty cash fund, making petty cash logbook entries, making daily bank deposits, and sending petty cash logbooks and records to the Anchorage office. By July of 1991, after Toomer had persistently failed to forward the petty cash records to the Anchorage office, and after inconsistencies had surfaced regarding the Barrow accounts receivable, UICC administrative manager Robert Hall traveled to Barrow to review the records and conduct a surprise cash count of the petty cash fund. He discovered that Toomer had not been making daily bank deposits and had consistently kept very large amounts of money (approximately $30,000 to $40,000) "sitting in the petty cash box." In addition, although the amount of cash that had been logged into the petty cash logbook and the amount of money that had been deposited into the bank matched, there were receipts for payments that had never been entered into the petty cash logbook.

Initially, Hall suspected that the missing logbook entries were "voids or mistakes," and thought the problem was one of poor recordkeeping. However, by adding receipt amounts and logbook cash entries for the period of January 30, 1991, through July 18, 1991, and by subtracting petty cash disbursements, Hall eventually concluded that $20,-165.26 of company money was indeed missing.[1]

At no time during his tenure at the Barrow facility had Toomer ever notified the Anchorage office about inconsistencies between the amount of money in the petty cash fund and the amount entered into the logbook. Because Toomer had been the only Barrow employee to make UICC bank deposits since January 30th, and because Toomer would, therefore, have been the only person to know about the unaccounted cash, Hall concluded that Toomer had stolen the money.

Hall then confronted three employees, including Toomer, who had direct access to the money in the petty cash fund. All three denied taking the money, but Toomer said that he felt responsible for the office and resigned. He was subsequently indicted for second-degree theft.

At trial, in addition to establishing the foregoing facts, the state presented testimony from a UICC employee who stated that he frequently walked into Toomer's office and saw him counting the petty cash, with the money "spread out on his desk." Another employee testified that he saw cash and checks in Toomer's desk drawer. And still another noticed that Toomer "always seemed to have a roll of bills in his pocket.... [A] big wad, which was kind of impressive ... and kind of odd." The state further presented testimony from Officer Dennis Packer, who had investigated Toomer's finances. Packer testified that Toomer's paychecks had always been picked up in Anchorage by his girlfriend and deposited into bank accounts there. Toomer made money wire transfers to certain people in Anchorage from the Anchorage accounts. In presenting Packer's testimony, the state evidently intended to raise an inference that Toomer must have used funds from sources other than his paychecks for his living expenses in Barrow.

In an attempt to show a possible motive for Toomer to have committed the alleged theft, the state additionally offered to call an acquaintance of Toomer from Barrow to testify about an occasion when Toomer had used

---

1. Hall concluded that UICC in Barrow had collected a total of $167,392.05, that $12,562.23 had been disbursed from the petty cash fund, that the petty cash fund had contained $1,600.42 on January 30, 1991, when Toomer took over, and that only $135,682.11 had been deposited into the bank. Therefore, the petty cash box should have contained $20,748.13. Instead, the box contained just $582.87—a $20,165.26 inconsistency.

cocaine. Toomer objected to the evidence, contending that it was irrelevant and, even if relevant, unduly prejudicial. Judge Jeffery nonetheless ruled the proffered evidence admissible.

Over Toomer's objection, Francine Hopson testified that she and a friend had once been drinking with Toomer and had gone to Toomer's residence in Barrow. There, Hopson said, she had seen Toomer "having cocaine." Hopson testified that after a short time at Toomer's residence she left and returned home; Hopson's friend remained at Toomer's residence.

■ On appeal, Toomer argues that Judge Jeffery erred in admitting Hopson's testimony. This argument has merit. In Alaska, the rule is well settled that evidence of past drug use by a person accused of a property crime is normally inadmissible on the issue of motive. See Gould v. State, 579 P.2d 535 (Alaska 1978); Eubanks v. State, 516 P.2d 726 (Alaska 1973); Miller v. State, 866 P.2d 130 (Alaska App.1994). To secure admission of such evidence, the state must establish a "particularized connection, or affirmative link, between the drug use and the charged offense." Miller, 866 P.2d at 133.[2]

■ No affirmative link was proved by the state or found by the trial court in Toomer's case. Gould and Eubanks squarely preclude the state's claim that Toomer's use of cocaine was relevant to show one of many uses to which he may have put money from the petty cash fund. There is no evidence here that obtaining cocaine was Toomer's direct objective in stealing money from the petty cash fund. See People v. Cardenas, 31 Cal.3d 897, 184 Cal.Rptr. 165, 169–70, 647 P.2d 569, 573–74 (1982) (evidence of narcotics addiction inadmissible because it "tended 'only remotely' to prove that appellant had committed the attempted robbery of money from the 7–Eleven store"). There is likewise no evidence that the drug use and the theft were an integral part of any common plan. Cf. Miller, 866 P.2d at 133–34 (evidence of drug dealing relevant to show that robbery originated in defendant's failure to generate sufficient funds through drug dealings to finance the purchase of more drugs).

■ Under the circumstances of this case, the trial court's decision to admit Hopson's testimony amounted to an abuse of discretion.[3] Although Hopson's testimony concerning Toomer's use of cocaine was brief, the testimony introduced an extraneous and potentially highly prejudicial dimension to Toomer's case. And although the trial court gave a cautionary instruction to the jury concerning Hopson's testimony,[4] that instruction expressly allowed the jury to consider Hopson's testimony as evidence of Toomer's motive for committing the alleged theft; by so doing, the instruction called the jury's attention to the testimony and effectively invited the jury to speculate on the nature and extent of Toomer's cocaine use.

The evidence presented against Toomer at trial was largely circumstantial, and, while it was not weak, neither was it overwhelming. In particular, the evidence failed to connect

---

2. As we explained in Miller, 866 P.2d at 133, this rule

recognize[s] that, since the desire for money is virtually universal and motivates most property crimes, it is a motive that can readily be understood by jurors, even in the absence of specific proof. For this reason, evidence that the accused needed money for a particularly reprehensible purpose such as the use of drugs, while potentially highly prejudicial, will add little on the issue of motive[.]

3. The admissibility of evidence is within the sound discretion of the trial court. Hawley v. State, 614 P.2d 1349, 1361 (Alaska 1980); Bodine v. State, 737 P.2d 1072, 1073–74 (Alaska App. 1987). The trial court's decision to admit relevant evidence despite its prejudicial effect is subject to reversal if shown to be an abuse of discretion. Dorman v. State, 622 P.2d 448, 461 (Alaska 1981).

4. Judge Jeffery instructed the jury as follows:

I just want to instruct the jury that the evidence you have just heard may not be considered by you to prove what kind of character the defendant has or that he has a disposition to commit crimes. Such evidence, if believed, may be considered by you only for the limited purpose of determining if it tends to show a motive for the commission of the crime charged. For the limited purpose for which you may consider such evidence you must weigh it in the same manner as you do all other evidence in the case. You are not permitted to consider such evidence for any other purpose.

Toomer directly to any stolen funds and indicated that other UICC employees routinely had access to the company's petty cash fund in Barrow. Having reviewed the entire record, we are not persuaded that the erroneous admission of Hopson's testimony did not appreciably affect the jury's verdict and impair Toomer's interest in having a fair trial. *Bostic v. State*, 805 P.2d 344, 347 (Alaska 1991) (citing *Love v. State*, 457 P.2d 622, 631 (Alaska 1969)). Because we cannot find that the error was harmless, we must reverse Toomer's conviction.

The conviction is REVERSED.